PITTSFIELD SAVINGS BANK *v.* BERRY *& a.*

A conveyance of land made in 1846 by a woman in contemplation of marriage, to hold upon the trust that the grantee "will stand seized thereof to the sole use, benefit, and behoof" of the grantor, vests the legal title in the grantee upon the trust declared; and it does not come within the operation of the statute of uses.

A mortgage of land so conveyed, made by the *cestui que trust* after her marriage, and before the statute of 1876, to secure a debt of her husband's, passes to the mortgagee all her equitable right and interest in the land, according to the terms of the deed.

BILL IN EQUITY, to foreclose a mortgage, dated December 14, 1870, given to the plaintiffs by the defendant Francis B. Berry, and his wife, Martha O. Berry, to secure a note of Francis B. Berry's for $4,250. In addition to the usual covenants of title, the mortgage contained a clause in which Martha O. Berry relinquished "all and every interest, right, and title I have" in the premises conveyed.

The mortgaged premises consisted of ninety acres of land, all of which, except about one eighth of an acre, then belonged to Francis B. Berry. As to the eighth of an acre, the paper title was then in one Jacob G. Cilley, as stated below.

The mortgagors were married February 16, 1846. February 13, 1846, in contemplation of their marriage, and with the knowledge and consent of her intended husband, Martha O. Berry (then Cilley), for the consideration of one dollar, conveyed to Jacob G. Cilley all her estate, real and personal, to have and to hold unto him, his heirs and assigns forever, upon the trust that the grantee, his heirs and assigns, "will stand seized thereof to the sole use, benefit, and behoof of the said Martha O., her heirs and assigns, * * * and will convey all or any part of said real and personal estate to whomsoever she shall appoint." The eighth of an acre was not part of the real estate referred to in this deed, but was purchased with proceeds of the trust property, and conveyed to the trustee December 18, 1848, without mentioning the trust. February 25, 1869, the trustee made a declaration under seal, duly executed and recorded, that he held said parcel of land for the use of and in trust for Martha O. Berry, her heirs and assigns.

Martha O. Berry died May 30, 1882, leaving a will whereby, in a residuary clause, she gave the trust property to her two children, the defendants Mary P. Brown and Frank Edward Berry. The other defendant, Green, is a subsequent mortgagee of the premises. The question whether the plaintiffs are entitled to a foreclosure of their mortgage as to the eighth of an acre was reserved.

*Chase & Streeter*, for the plaintiffs.

*W. L. Foster*, for the defendants.

CLARK, J.  The conveyance by Mrs. Berry made in contemplation of marriage, with the knowledge and consent of her prospective husband, being manifestly intended to create an estate in trust for her sole and separate use, divested of the common-law rights of the husband, vested the legal estate in the trustee during coverture, unless the trust was sooner terminated by her.  If, by the operation of the statute of uses, the use was at once executed and the estate re-vested in the *cestui que trust*, the object of the conveyance was defeated.  To give effect to the intention of the parties, and accomplish the purpose for which the trust was created, the legal estate must necessarily continue in the trustee, although he was invested with no discretionary power and no active duties were laid upon him.  The trust was not within the operation of the statute.  Per. Tr., ss. 307, 310, 310 *a ; Richardson* v. *Stodder*, 100 Mass. 528 ; *Ayer* v. *Ayer*, 16 Pick. 327.  The declaration of trust, executed by the trustee February 25, 1869, embracing the real estate in controversy, was impliedly upon the same conditions and to the same uses as the original trust, and related to the same property, and therefore it was not executed by the statute.

But, although the legal estate was vested in the trustee at the date of the mortgage to the bank, the equitable estate was in the *cestui que trust*, who was in possession of the property, with full power to occupy, control, or dispose of it without limitation or restraint.  If it was his intention, it was not in the power of the trustee to enlarge his authority and impose new limitations and restrictions upon the power of the *cestui que trust* by investing the trust funds in real estate, and taking the conveyance in his own name.  However invested, the trust estate continued subject to the conditions under which the trust was originally created.  The estate of Mrs. Berry being free from the control of her husband, her coverture imposed no disability.  As to this property, she was *sui juris*, and by joining with her husband in executing the mortgage, she conveyed to the bank all her estate in the premises covered by the mortgage.  " In the consideration of a court of equity, the *cestui que trust* is actually seized of the freehold.  He may alien it, and any legal conveyance by him will have the same operation in equity upon the trust as it would have had at law upon the legal estate."  *Croxall* v. *Shererd*, 5 Wall. 268, 281.  " As the trustee may, in a court of law, as a general rule, deal with the legal estate in his hands as if he was the absolute owner, so the *cestui que trust* in a court of equity may deal with the equitable estate in him : he is the beneficial and substantial owner, and in the absence of any disability—that is, if he is *sui juris*—he may sell and dispose of it ; and any legal conveyance of it will have in equity the same operation upon the equitable estate as a similar conveyance of the legal

estate would have at law upon the legal estate." Per. Tr., *s.* 321. Where the absolute beneficial interest in the trust fund is subject to the control and alienation of the wife (as it was in this case), the concurrence of the trustee is not necessary to the validity of an alienation by her, unless it is made requisite by the terms of the trust. " The trustees will be compelled to give legal effect to any such alienation by transferring the property, even if it is a gift and transfer to the husband, or for his benefit: for a direct gift to the husband himself will be sustained if not made under the improper or undue influence of the husband." Per. Tr., *s.* 667. In *Taylor* v. *Meads*, 34 L. J. Ch. 203, it is said,—" The whole matter lies between a married woman and her trustees ; and the true theory of her alienation is, that any instrument, be it deed or writing, when signed by her, operates as a direction to the trustees to convey or hold the estate according to the new trust which is created by such direction. This is sufficient to convey the *feme covert's* equitable interest. When the trust thus created is clothed by the trustees with the legal estate, the alienation is complete, both at law and in equity." Bish. Eq., *s.* 101. The execution of the mortgage by Mrs. Berry operated as an appointment by her, and a direction to the trustee to convey the legal title in mortgage to the bank ; and the bank could have compelled a conveyance by bill in equity.

When the mortgage was made, the power of a married woman to charge her separate estate with the payment of her husband's debts was unrestricted. *Babbitt* v. *Morrison*, 58 N. H. 419 ; *Thompson* v. *Ela*, 58 N. H. 490. The mortgage is valid as to the whole land, and the bank is entitled to a

*Decree of foreclosure.*

SMITH, J., did not sit: the others concurred.