Grafton,  }
Dec. 4, 1902. }

WEED *v.* WOODS.

In the construction of a deed of real estate, it is the duty of the court to place itself as nearly as possible in the situation of the parties at the time the instrument was executed, that it may gather their intention from the language employed, viewed in the light of the surrounding circumstances.

Under a clause in a deed reserving a chapel situated on the premises, together with the land on which it stands, the property retained by the grantor is the chapel lot as it existed at the date of the conveyance, and the buildings thereon devoted exclusively to chapel purposes, when such an intention is shown by the language of the deed, weighed in the light of the attending circumstances.

In the construction of a deed of real estate, meaningless words may be rejected.

Where a deed reserves to the grantor a certain portion of the premises conveyed so long as a religious association may want it, the estate retained is a qualified or determinable fee; and during its continuance the grantor and his successors in title, while they retain possession, have all the rights of tenants in fee simple.

TRESPASS *quare clausum.* Plea, the general issue, with a brief statement of soil and freehold. Facts found by a referee, and case transferred from the May term, 1902, of the superior court by *Pike,* J.

October 19, 1897, the plaintiff conveyed to the defendant her homestead farm, consisting of two parcels, by a deed which contained the following clause: "Reserving, however, the building situated on the last-described premises known as the chapel, together with the right to the land on which said building stands, said building to remain as long as the association owning the same may want it." The present controversy arises over the interpretation to be given this clause.

One of the parcels conveyed was bounded westerly and northerly by highways which crossed each other at its northwest corner. At this corner and facing the west road, there stood at the date of the deed a building called the chapel, which was erected by the plaintiff and was used for religious purposes by an informal religious group or organization, known as the Holiness Society, of which the plaintiff was the promoter and leader. The west end of the building, which was on the easterly line of the west road, contained its sole entrance. South of the building, and less than forty feet distant, was the framework of an uncompleted shed or building with apartments for the accommodation of horses, hereinafter referred to as horse-sheds, the construction of which was not fully completed. They were begun shortly before the plaintiff deeded the premises to the defendant. The lot upon which the chapel and horse-sheds stood was enclosed on three sides, as follows : on the north, partially by a fence on the south side of the north road; on the east, by a fence extending from the north-road fence southerly to the northeast corner of the chapel, by the rear end of the chapel, by a fence extending from the southeast corner of the chapel to the east end of the horse-sheds, and by their east end; and on the south, by the south side of the horse-sheds and by a fence from the rear west end thereof, westerly to the west road.

The chapel, horse-sheds, and fences were plainly visible from the roads and other points of observation on the farm, where the defendant traveled in making examination before purchasing the property. She saw the chapel and horse-sheds, and either saw, or could have seen by the exercise of ordinary care and observation, the fences enclosing the same. The horse-sheds were constructed for the accommodation of persons coming in teams to attend worship in the chapel, and when completed would be suitable and convenient for the purpose intended. They were not absolutely necessary to the reasonable occupation, use, and enjoyment of the chapel, but would render such occupation, use, and enjoyment more complete and convenient. The land indispensable to the reasonable enjoyment of the chapel is bounded by a line two and a half feet from the north, east, and south sides thereof.

In December, 1899, the defendant, claiming to act under her

deed, entered the chapel enclosure with her servants, removed the fences and horse-sheds, and erected a fence from the northwest corner of the chapel to the north road, and another from the southwest corner of the building to her land on the east side of the west road. The referee found that if the defendant had no right to enter and remove the horse-sheds and fences, she was guilty, and assessed the plaintiff's damages at twenty-six dollars. The Holiness Society did not own, or claim to own, or have in possession the chapel, horse-sheds, chapel enclosure, or any of the other property. Both parties moved for judgment.

*William A. Flanders* and *George F. Morris*, for the plaintiff.

*Batchellor & Mitchell*, for the defendant.

BINGHAM, J. A construction of the clause in the deed,— "Reserving, however, the building situated on the last-described premises known as the chapel, together with the right to the land on which said building stands, said building to remain as long as the association owning the same may want it,"—necessitates a determination of the extent of territory in which the plaintiff retained a property interest, and the nature of that interest. The investigation involves an ascertainment of the fact of the parties' intention from competent evidence. *Johnson* v. *Conant*, 64 N. H. 109. The construction and effect to be given the clause "does not depend upon the absence of all ambiguity. When its meaning is not reasonably and morally certain, the contract is not altered for that reason. However inconclusive the evidence, it is to be weighed. However doubtful the intention, a preponderance of probability is enough to establish it. . . . An equitable result is generally reached if due effort is made to ascertain the fact of intention by balancing probabilities." *Smith* v. *Furbish*, 68 N. H. 123, 135, 136, 138, 139.

In proceeding to construe the clause, it is the duty of the court to place itself as nearly as possible in the situation of the parties at the time the instrument was made, that it may gather their intention from the language used, viewed in the light of the surrounding circumstances. It will inquire into the "actual, rightful state of the property" at that time (*Dunklee* v. *Railroad*, 24 N. H. 489; 3 Wash. R. P., s. 2294), for the parties are supposed to refer to the state of the property for a definition of the terms made use of in the writing.

It appears in this case, that at the time the deed was given the land or lot upon which the chapel stood was situated at the southeasterly junction of two roads; that it was enclosed by fixed

bounds, separating it from the balance of the farm; that upon it were horse-sheds constructed for the accommodation of persons coming in teams to attend worship in the chapel; that while the horse-sheds were not absolutely necessary to a reasonable occupation, use, and enjoyment of the chapel, they would render such occupation, use, and enjoyment more complete and convenient; that the chapel was used for religious purposes by an informal religious group or organization, called the Holiness Society, of which the plaintiff was a member; that the plaintiff owned the lot and chapel, the other members having no interest in the property; that the chapel, horse-sheds, and fences were plainly visible from points where the defendant traveled in making an examination of the property before purchasing; and that she saw the chapel and sheds, and saw or could have seen the fences, had she desired. This evidence establishes by a balance of probabilities' that the parties understood and intended that the words " land on which said building [the chapel] stands " should mean the lot of land upon which the chapel stood and devoted exclusively to chapel purposes. The property retained by the plaintiff was the chapel lot as it existed at the time of the execution of the deed, with the sheds upon it.

The Holiness Society (the association referred to) owned no part of the property; and as the words " owning the same " are meaningless, they may be rejected. *Holbrook* v. *Bowman*, 62 N. H. 313. The clause will then read: Reserving, however, the building situated on the last-described premises known as the chapel, together with the right to the land on which said building stands, said building to remain as long as the association may want it.

It matters not whether this clause is technically a reservation or an exception; such a classification lends no aid to its interpretation. The estate retained by the plaintiff in the lot is a fee, not because as a matter of law it " is an exception and not a reservation," but because the clause, " understood in the ordinary and popular sense of its terms," reserves an estate which may be of perpetual continuance. *Cole* v. *Lake Co.*, 54 N. H. 242, 277, 278; *Smith* v. *Furbish*, 68 N. H. 123, 141, 142, 143, 144, 145; 1 Wash. R. P. (6th ed.), s. 162. It is not an estate for the life of the plaintiff, for the particular limitation agreed upon by the parties might happen either before or after her decease, or it might never happen. For the same reasons, it it not an estate for years or for any shorter period. It is an estate in fee, determinable upon the association ceasing to want it for chapel purposes. It is not " an absolute fee, nor an estate on condition, but an estate which is to continue till the happening of a certain event, and then to cease. That event may happen at any time, or it may never happen.

Because the estate may last forever, it is a fee. Because it may end on the happening of the event, it is what is usually called a determinable or qualified fee." *First Universalist Society* v. *Boland,* 155 Mass. 171, 174; 15 L. R. A. 231, note; 1 Wash. R. P., *s.* 167. By such a construction, the intention of the parties will be carried out and effect given to this clause of the deed. So long as this estate continues, and the plaintiff and her successors in title retain the possession, they will have all the rights in respect to it which they would have if they were tenants in fee simple. 1 Wash. R. P., *s.* 168.

*Judgment for the plaintiff.*

All concurred.