Rockingham, }
Jan. 3, 1911. }

## GRANITE STATE LAND CO. *v.* HAMPTON.

Where a town has adopted the provisions of chapter 79, Public Statutes, relating to the construction of sewers, the selectmen in proceeding thereunder act as public officers and not as agents of the town; and a vote of the town requiring action or non-action by the selectmen is merely advisory.

The selectmen of a town which has adopted the provisions of chapter 79, Public Statutes, have authority to construct sewers in a village district within the town limits which has not adopted the act.

An assessment of the expense of sewer construction upon lands specially benefited thereby is a valid exercise of the taxing power.

Where a sewer constructed under chapter 79, Public Statutes, is of benefit to land which has been improved by the erection of buildings owned by a lessee, the landowner is liable to assessment only to the extent of his interest in the estate.

PETITION, for the abatement of an assessment made by the selectmen of Hampton under chapter 79, Public Statutes. Transferred from the January term, 1910, of the superior court by *Plummer*, J.

At a regularly called meeting, held June 6, 1908, the town of Hampton, under an appropriate article in the warrant, voted to adopt the provisions of chapter 79, Public Statutes, relating to sidewalks and sewers. On the same day, after the meeting, the selectmen of Hampton voted to build the sewer in question for the public convenience and health.

Hampton Beach Village District was duly organized in 1907, under chapter 53, Public Statutes. Among the purposes of the district was the construction and maintenance of common drains and sewers. The district has not voted to adopt chapter 79, Public Statutes, nor voted or acted in relation to the construction of this or any sewer. The sewer was constructed by the selectmen wholly within the boundaries of the district. At the end of the assessment list in relation to the sewer is the following, signed by the selectmen: "The above and foregoing is a correct list of the assessment made upon lands and buildings which are benefited by the public sewer built by the town in 1908. The assessment is $50 on each lot and $65 on each $1,000 of valuation of buildings in said assessment. Total amount of assessment, $15,275."

The petitioners are tenants of a large number of lots for an unexpired term of seventeen years and owners of buildings upon three of them—the only ones that are improved. The appeal is from the assessment made against the petitioners on account of these lots and buildings. The total assessment against the petitioners is $2,039, of which $338 is upon buildings. Of the balance, $400 has been abated because of the inclusion of lots not leased to the petitioners. The petitioners are lessees of the Hampton Beach Improvement Company, and the latter corporation are lessees of the town of Hampton for an unexpired term of eighty-seven years.

*Samuel W. Emery* (of Massachusetts), for the plaintiffs.

*Eastman, Scammon & Gardner*, for the defendants.

PARSONS, C. J. By section 8, chapter 50, Public Statutes, city councils have power to construct drains and common sewers, and to require all persons to pay a reasonable sum for the right to open any drain into any public drain or sewer. This is a special power conferred upon cities, and action taken thereunder is the act of the city. *Rowe* v. *Portsmouth*, 56 N. H. 291. By section 2, chapter 79, Public Statutes, the mayor and aldermen of any city "may construct and maintain all main drains or common sewers which they adjudge necessary for the public convenience and health." Section 4 of the same chapter is: "The mayor and aldermen may assess upon the persons whose drains enter such main drains or common sewers, or whose lands receive special benefit

therefrom in any way, their just share of the expense of constructing and maintaining the same." There is a clear distinction between the two methods of sewer construction. In the first, the city acts by its agents. In the second, the mayor and aldermen, as public officers under power directly conferred by the legislature, are required to judicially determine the question of necessity and to act thereon. The city as a corporation has no control over the question what sewers shall be built, although it may provide under section 8, chapter 79, for the payment by the city of the whole or a part of the expense of the sewers constructed by the aldermen. No authority is found for the construction of sewers by towns similar to that conferred upon cities by section 8, chapter 50, Public Statutes. *Contoocook Fire Precinct* v. *Hopkinton,* 71 N. H. 574.

Chapter 79, Public Statutes, though primarily designed for cities, is in force in such towns and village districts as may adopt the same. *Ib., s.* 10. In that case the statute provides that "the selectmen shall perform all the duties and possess all the powers in the town or the district, as the case may be, conferred by this chapter upon the mayor and aldermen." In proceeding under this chapter, under power directly conferred by the legislature, the selectmen, like the mayor and aldermen, act as public officers and not as agents of their respective municipalities. Their power is to construct such main drains or common sewers as they "adjudge necessary for the public convenience and health." A vote of the town requiring action or inaction by the selectmen would be merely advisory. Their power and duty would depend, not upon the instructions of the town, but upon whether as matter of law they have jurisdiction in the particular case to adjudge the question of necessity. From section 10, above quoted, it may not be entirely clear whether in the case of village districts the officers upon whom the powers of mayor and aldermen in the premises are conferred are the selectmen of the town in which the district is situate, or the commissioners of the district, in whom are vested the same powers, and who are authorized to perform the same duties in respect to the district's business affairs that selectmen possess and perform in respect to like matters in towns. P. S., *c.* 53, *s.* 7. But the original statute conferring the power of adoption upon village districts, which it was intended to incorporate in the Public Statutes without material change (Comm'rs' Rep. P. S., *c.* 78, *s.* 12), makes it clear that in case the statute is in force in such

a district, the powers of the mayor and aldermen are conferred upon the selectmen of the town in which the district is situate. Laws 1883, *c.* 77, *s.* 1. It is there expressly provided that in case the statute is adopted by a village precinct or village fire precinct, "the selectmen of the town or towns in which such village precinct or village fire district is situated shall perform all the duties and have all the powers conferred upon the mayor and aldermen in case of cities."

The assessment of which the plaintiffs complain was made by the selectmen of Hampton for the expense of a sewer constructed by them for the public convenience and health in the town of Hampton, under authority conferred by the adoption of chapter 79 of the Public Statutes by the town at a legal meeting in June, 1908. The defendants rest the jurisdiction of the selectmen upon the adoption of the chapter by the town. The plaintiffs do not contest the validity of the town's action in adopting the chapter, but claim that the selectmen were without jurisdiction to build the sewer where they did, because all of the territory served by the sewer is within the territorial limits of the Hampton Beach Village District, a village district duly organized in 1907 under chapter 53, Public Statutes, one of the purposes of its organization being the construction and maintenance of common drains and sewers. This district has not voted to adopt chapter 79 of the Public Statutes, nor taken any action in relation to the construction of this or any sewer.

The sole question as to the authority of the selectmen is whether chapter 79, Public Statutes, is in force within the limits of the Hampton Beach Village District. If it is, the assessment does not fail because of lack of jurisdiction in the selectmen of Hampton. The territory is all within the town of Hampton; and the adoption of the act necessarily gave the selectmen jurisdiction in all parts of the town, unless it was limited or taken away by the organization of the district, as to the territory embraced therein. The argument that the retention by the town of the power to act would tend to confusion is without substance. Whether the authority is conferred by action of the town or of the district in adopting the sewer statute, the same tribunal decides the question of necessity and lays the assessment; the same officers construct the sewer. The action in either case cannot be affected by the source of the power, except that, if derived from the district, the selectmen's sewer-building power would not extend beyond the limits of the district.

The original of the present statute authorizing the organization of village districts is chapter 852, Laws 1849: "An act making further provisions for the extinguishing of fires." The purpose of the act was to enable the inhabitants of the compact part of towns to tax themselves to provide and keep in repair apparatus for preventing and extinguishing fires and for the maintenance of the necessary officers to operate the same. Other purposes have been added from time to time. The theory of the legislation has been to provide special facilities for certain portions of the town specially interested therein, which the whole town might be unwilling, or could not properly be called upon, to support by general taxation. But no legislation has been discovered prohibiting towns from acting upon the same subjects if they are willing to do so. If the town of Hampton, under the statute, by force of the votes at the special meeting, had power to construct the sewer in question at the expense of the town, like power in the district to construct a sewer at the expense of the district alone would not have prevented action by the town. In the one case, the expenditure would be met by general taxation; in the other, by taxation of the district only. For all town expenditures, the property of the district is still left under the general law to bear its share. It is not relieved because of special expenditure made by the district. Such is the theory of the special statute (Laws 1909, *c.* 319) which has been cited. As the purpose of the legislation is not to take power from the whole town, but to give special authority to a part of it, in the absence of some provision limiting the sewer-constructing jurisdiction of the selectmen, obtained by the adoption of chapter 79, Public Statutes, by the town, to such parts of the town as are not included within the boundaries of a village district, it is probable it was intended such jurisdiction should extend throughout the town. The statute merely permits a village district to adopt the sewer statute if the town is unwilling to do so, but does not limit the town's power to act. If the sewer-building purpose had not been declared as one of the purposes of the district organization, it is not probable it would have been claimed that the existence of a district organized for some other purpose limited the effect of the town's adoption of the statute.

But the inclusion of such a purpose among the purposes for which the district was organized was not necessary to authorize the district to adopt the sewer statute. Any district, for whatever

purpose organized, may adopt the statute. P. S., c. 79, s. 10; Laws 1883, c. 77, s. 1. The inclusion of this particular purpose among those for which a district may be organized first appears in the revision of 1891. P. S., c. 53, s. 1. It may have been inserted in view of the legislation of 1883 above cited (c. 77, s. 1), to permit the organization of districts for sewer purposes only. In addition to the powers of towns for like purposes, a district has "all that are necessary for the accomplishment of its purposes." P. S., c. 53, s. 3. As a body corporate and politic organized for the construction of sewers, it would seem to have the power to provide by vote for their construction and for the expense of construction and maintenance by local taxation. In other words, it may be that the district possesses the powers conferred on city councils by section 8, chapter 50, Public Statutes, to construct drains and common sewers as agents of the city. There is no conflict between such a power, if possessed by the district, and the jurisdiction of the selectmen to act when necessary for the public convenience and health.

If the district, as a corporation, builds all the sewers that are necessary, there will be no occasion for the exercise of the judicial power conferred on the selectmen. If the district prefers to have the expense of sewer construction and maintenance met by taxation upon all the property in the district, rather than by an assessment "upon those whose lands receive special benefit therefrom," they can so provide. P. S., c. 79, ss. 8, 10. The selectmen had jurisdiction to adjudge the question of necessity, construct the sewer, and make the assessment.

The remaining question is whether there is any defect in the assessment made against the petitioners which entitles them to relief in this proceeding. They object because they are assessed on account of buildings which they do own and of land which they do not own. While an assessment of this sort differs from a tax, in that it may not be included within general provisions of exemption from taxation and perhaps in other respects, yet such assessments are a legal exercise of the taxing power and can be justified only on that ground. Cool. Tax. 147, 148, 456. But it is unnecessary to go into this question. The method prescribed in the making and collection of the assessment is that followed in general taxation (P. S., c. 79, ss. 4, 8; Laws 1870, c. 5, ss. 2, 3), and the power to so distribute the expense of the sewer is not controverted. "The mayor and aldermen may assess upon the

persons . . . whose lands receive special benefit therefrom in any way, their just share of the expense." P. S., *c.* 79, *s.* 4. This substitutes the word "lands" for the words "real estate" used in section 2, chapter 5, Laws 1870, but there is no difference in meaning. The assessment recognizes the ownership of the buildings upon lands of another by the separate assessment. Buildings so situate are real estate for the purposes of taxation and are properly so assessed to the owner for taxation. *O'Donnell* v. *Meredith*, 75 N. H. 272; P. S., *c.* 61, *s.* 21; *Ib.*, *c.* 58, *ss.* 2, 3. They are therefore to be considered as "lands" or "real estate," as the terms are used in the sewer statutes. Real estate is taxed to the person claiming the same, or to the person who is in possession or actual occupancy thereof, if such person will consent to be taxed for the same. P. S., *c.* 56, *s.* 14. There are provisions for the taxation of such property (P. S., *c.* 56, *ss.* 22, 26), but none are found authorizing the taxation of any person without his consent for lands not owned by him. *Warren* v. *Wentworth*, 45 N. H. 564; *Thompson* v. *Gerrish*, 57 N. H. 85; *French* v. *Spalding*, 61 N. H. 395; *Burpee* v. *Russell*, 64 N. H. 62.

But the question in this case is not the validity of a tax title dependent upon a sale under the assessment, but is what order justice requires. P. S., *c.* 59, *s.* 11. A tax invalid because assessed against a person not the owner is not abated on the petition of the owner, because justice requires that the owner should be taxed for the fair value of his land. *Carpenter* v. *Dalton*, 58 N. H. 615. The relief to which the plaintiffs are entitled is such as is equitable. *Perry's Petition*, 16 N. H. 44, 48; *Edes* v. *Boardman*, 58 N. H. 580, 588; *Amoskeag Mfg. Co.* v. *Manchester*, 70 N. H. 200, 205. The title is peculiar. The town of Hampton, as owner of the land, has leased the same upon an annual rental for an unexpired term of eighty-seven years to the Hampton Beach Improvement Company. The plaintiffs are lessees of the Improvement Company upon a like rental, under a lease which has seventeen years to run. The town, the Improvement Company, and the plaintiffs have distinct interests in the property.

"Whenever it shall appear to the selectmen that several persons are owners of distinct interests in the same real estate, . . . they shall upon request appraise such interests and assess the same to the owners thereof separately." P. S., *c.* 58, *s.* 2. For the purpose of collecting taxes, "any separate interest in land . . . shall be taken to be real estate." P. S., *c.* 61, *s.* 21. "In a majority

of the states, the rule prescribed by the statutes is that land and other real estate shall be valued *as such*, irrespective of the separate estates that individuals may have in them. . . . The practice, however, has not been universal; in some states, and particularly in some special proceedings, the statutes have required separate interests to be separately assessed." Cool. Tax. 288, 289. As heretofore suggested, an assessment of this character is not a tax in the sense that it is the distribution of the expense of a public purpose in which all are interested. It is merely the division of the expense of an improvement which renders specific property more valuable, in the ratio of the increase of such value. *Matter of Mayor of New York*, 11 Johns. 77, 80.

In the state of the title, the plaintiffs' leasehold interest, created before the making of the improvement, may be made more valuable by the expenditure that has been made. The reversion in their lessor is not so distant that it must of necessity be found that value has not been added thereto. Without considering whether in the ordinary case of lessor and lessee for a term the statute cited (P. S., c. 58, s. 2) intends a separate assessment,—a matter ordinarily adjusted between lessor and lessee in the rental (*Morrison* v. *Manchester*, 58 N. H. 538, 556),—it seems clear that under the peculiar circumstances of the case it may be equitable that the plaintiffs should pay some part, greater or less, of the expense of this improvement. The word "lands" in the statute being sufficiently comprehensive to include the plaintiffs' interest in the lots, if that interest "receives special benefit in any way" the plaintiffs' "just share of the expense" may properly be assessed against them. If the lots are benefited by the sewer, as appears to be conceded since no question is raised as to the amount of the assessment, it seems clear that the plaintiffs' estate for years is rendered to some extent more valuable. The plaintiffs, therefore, will obtain full relief if their assessment is reduced by abatement to the fair share of their interest in the expense chargeable to each lot. The plaintiffs cannot justly be called upon to pay more than their share of the benefit to the property. The defendants appear to concede this in their brief, but claim the question is not open. The assessment by the record is plainly upon the land—the whole title; and being improperly assessed against the plaintiffs, who do not own the whole, the petition for abatement can be denied only so far as the plaintiffs ought to pay on the interest they do own. *Carpenter* v. *Dalton*, 58 N. H. 615. The

requested abatement of the assessment upon buildings is denied. The assessment on each lot is fifty dollars. When it is found how much of said sum should be justly charged to the interests in the lot which the plaintiffs do not own, an abatement of so much of the assessment on each lot should be made.

*Case discharged.*

All concurred.