Rockingham, }
Oct. 3, 1933. }

NEWMARKET MANUFACTURING COMPANY
*v.*
NOTTINGHAM.

*Allen Hollis* and *Donald Knowlton*, for the plaintiff.

*George R. Scammon*, for the defendant.

PEASLEE, C. J.   It is the law of this jurisdiction that water rights are taxable to the owner thereof, although he does not own the fee in the underlying and supporting land.   *Winnipiseogee &c. Company* v. *Gilford*, 64 N. H. 337.

The question here presented is whether the plaintiff owns any water rights situate in the defendant town.   The instrument conferring upon the plaintiff certain rights is in the form of a covenant that the covenantor will perpetually manage the outflow of the reservoirs for the benefit of the covenantee.   This confers a right to a beneficial use of the reservoirs.   If the covenantor had executed a perpetual lease of the flow, thus regulated, there would be no doubt that the lessee thereby acquired an interest taxable in Nottingham.   *Granite State Land Co.* v. *Hampton*, 76 N. H. 1.

It is argued that since the express terms of the covenant are merely that the covenantor will manage the water so as to be of the greatest benefit to the plaintiff, therefore the plaintiff has only a personal right, but no interest in the real estate.   But the necessary result of this agreement is that the plaintiff thereby acquired a right that the water should flow as agreed.   That the contract is put in terms of causation rather than results does not alter its efficiency to create rights vested in the contractee.   An agreement under seal to cause water to flow in a prescribed way is a grant of the right to have it flow as prescribed.

The present contract is not only a grant of water rights.   It is something more.   To the right is added the obligation of the covenantor to do certain positive acts which are necessary to be done for the full enjoyment of the granted rights.   But it does not follow that because the covenantor undertook this duty the underlying right of the covenantee was non-existent.

The existence of this right is clearly recognized in the contract.   The agreement is to continue in force "during such time as Pawtuckaway

and Mendum's Ponds, or either of them, continue to be used as reservoirs for the storage of water for the use of the Manufacturing Company, or for the use of the Newmarket Electric Company, or their respective successors and assigns." The active covenant of the improvement company is to "at all times control the operation of all its gates . . . in such a manner as will best equalize the flow of water in the Lamprey River for the benefit of the Manufacturing Company and the Newmarket Electric Company, and their respective successors and assigns, as the owners of water privileges on the Lamprey River." In the event of damage by flood in excess of $5,000, repairs upon the physical property in excess of that cost are to be made by the power owners. The document is designated an "indenture," and recites that the parties "covenant and agree."

The term property "although frequently applied to the thing itself, in strictness means only the rights of the owner in relation to it." *Smith* v. *Furbish*, 68 N. H. 123, 144. The plaintiff here acquired certain rights in the use of the water. No one would doubt that if the improvement company defaulted the plaintiff would be granted relief in equity. *Fowler* v. *Kent*, 71 N. H. 388. Its rights to the flow of water would be vindicated. It would not be left to an action for damages for breach of covenant. In short, it acquired a right to the stipulated flow of water. It owned the control of the flow. Although it contracted that the specified control should be exercised by another, it was to be exercised wholly in the interest of the plaintiff.

Had the contract been that the plaintiff might regulate the flow as would be most for the benefit of its mills below, no one would doubt that an interest in property in Nottingham had been conveyed. Had the contract been that A should thereafter manage the outflow in like manner, the same conclusion would follow. The case is not made different in substance when the duty of management is put upon the grantor of the right.

The essence of the property here in question, the valuable thing, is the control of the flow of water. Whoever owns that control owns a valuable right. If he purchased the right to have the control exercised in a specified way he became the owner of property. "In its final analysis, the property in any thing consists in the use." *Barker* v. *Company*, 78 N. H. 571, 573; *Arlington Mills* v. *Salem*, 83 N. H. 148, 156.

The duty to give is complemented by the right to receive. A conveyance of a right to receive a certain flow of water, has been treated as transferring an interest in real estate. The fact that the contract

stated the matter in terms of obligation of the grantor to cause or permit the flow has not been treated as reducing the right to a personal *chose in action. Fowler* v. *Kent,* 71 N. H. 388.

In *Horne* v. *Hutchins,* 71 N. H. 117; *Horne* v. *Hutchins,* 71 N. H. 128 and *Berry* v. *Hutchins,* 73 N. H. 310, the reservoir was controlled by Hutchins, who owned the dam, flowage rights, etc. The dispute concerned the rights, by implied grant to owners of water powers below the reservoir, to have Hutchins control the flow in a manner beneficial to them. In this extended and closely contested litigation, the rights of the down stream proprietors are uniformly spoken of as "rights in the reservoir." They are treated throughout as real estate, although they consisted solely of a right to a controlled flow, and the duty to control remained upon the grantor of that right.

Again, it is said to be evident that it was the intent of these parties to make a purely personal contract, and that their intent should govern. It is by no means clear that such intent existed. One might surmise that there was a design on the part of the plaintiff to escape the responsibilities of a property owner, while enjoying all the rights of such proprietorship; but there is nothing in the covenants entered into to warrant the conclusion that this was a controlling purpose of both parties, to which effect should be given in disregard of the language of their contract.

The plaintiff's misconception of the nature of the rights acquired could not alter the legal effect of the purchase. *Smart* v. *Huckins,* 82 N. H. 342. That the plaintiff intended to and did purchase the right to have the water controlled for its benefit is not open to doubt. If it thought this right of control was only a personal *chose in action,* there was merely a mistaken view taken of the law governing the transaction. But the existence of even this state of mind is not shown by the record.

Some question has been raised as to what the name of the plaintiff's right may be. Objection is made that the writing does not fully answer to the standard description of any recognized conveyance of a right in real estate; and hence it is argued that it cannot have transferred such a right. It has been many years since the technicalities of real estate conveyancing have been much regarded here. Given an instrument signed and under seal, all the rest is determined according to the manifest intent of the parties. The interest created is that which the parties intended to create, without regard to rules or titles coming down from feudal times. *Cole* v. *Company,* 54 N. H. 242; *Kendall* v. *Green,* 67 N. H. 557; *Weed* v. *Woods,* 71 N. H. 581.

But if a title or name be thought necessary to the validity of the estate created, one is to be found in the English law. It was the very early rule that where A covenants with B to stand seized for the use of B, "it is a good and valid bargain and sale under the statute" of uses. 2 Blk. Com. 338, Archbold's note, citing 7 Co. 40, b; 2 Inst. 672; 1 Leon. 25; 1 Mod. 175; 2 Lev. 10. This is the substance of the covenant entered into in the present case. By the terms of the compact the use of the property (the control of the water) is to be for the sole benefit of the covenantee. If the covenantor performs its covenant, the usufruct cannot be diverted from that end. Out-grown formalities of expression of thought are no longer required in conveyancing. Any language that expresses the end in view is sufficient. The clear meaning of the language in this covenant is that the grantor holds the right to control the flow for the use of the covenantee. Its meaning in fact is also its meaning in law. Having that legal meaning, it is a valid conveyance of right, by bargain and sale, executed in the form of an agreement to stand seized, or, in modern phraseology, a contract to continue to hold to certain uses.

In order to constitute a good covenant to stand seized to uses, it is not necessary that such terminology be used. An ordinary deed, which can be effective only as a covenant to stand seized to uses, will be held a conveyance of the latter kind, when it is evident that the parties intended that it should transfer rights from one to the other. *Merrill* v. *Company*, 77 N. H. 285; *Dennett* v. *Dennett*, 40 N. H. 498; *Shed* v. *Shed*, 3 N. H. 432.

The plaintiff thus having a good and sufficient conveyance of a right in real estate, it is to be called by the same name that is given to a like right when conveyed by a deed containing all the formal words and phrases. The plaintiff owns water rights in Nottingham, and they are taxable to the plaintiff in that town.

It is also suggested that this conveyance should not be regarded as creating an executed use but rather as setting up a trust for the benefit of the mills, that the doctrines developed in the course of the judicial defeat of the purposes of the statute of uses should not be employed to defeat the manifest intent of the parties, (*Pittsfield Savings Bank* v. *Berry*, 63 N. H. 109) that such intent was plainly to create an interest for the benefit of the mills while the title was held and the property managed by the improvement company.

If it were granted that this line of argument should prevail as to the interest created, it would not affect the result here. The main issue presented is whether an estate, separate from the entire fee was cre-

ated.    If it was only a trust it was nevertheless an estate, and taxable.

While on the trust theory it should have been taxed to the trustee in its official capacity (P. L., c. 61, s. 22) the assessment would be separate from that upon the remainder of the whole fee which the improvement company retained.    And since this petitioner would on that theory be the party out of whose beneficial interest the tax should be paid, it would not be granted an abatement on the ground that its tax was assessed as against itself rather than against its trustee.    The requirements of justice, being the test for a tax abatement, it is manifest that this trust theory would afford no ground for relief here.

*Case discharged.*

All concurred.