Merrimack
No. 84-557

## MICHAEL B. KING

v.

## JOHN H. SUNUNU, GOVERNOR, AND ROBERT L. BRUNELLE, EDUCATION COMMISSIONER

March 27, 1985

*Law Office of Michael B. King*, of Hanover (*Michael B. King* on the brief and orally), for the plaintiff.

*Stephen E. Merrill*, attorney general (*Bruce E. Mohl*, assistant attorney general, on the brief and orally), for the defendants.

*Nighswander, Martin, Kidder & Mitchell P.A.*, of Laconia (*James L. Burke* on the brief), by brief for the New Hampshire School Boards Association, as amicus curiae.

DOUGLAS, J.   In this declaratory judgment action, we are asked to determine whether, in construing the legislative provisions pertaining to the distribution of sweepstakes revenue, the Superior Court (*Dunfey*, C.J.) erred in finding (a) that Laws 1983, 469:32, II controlled the distribution of the State's sweepstakes revenue only to the extent of the revenue estimate of $4.7 million; and (b) that any sweepstakes revenue in excess of $4.7 million was to be governed by RSA 284:21-j (Supp. 1983). We reverse.

This dispute arises out of an agreement between the State of New Hampshire and Digital Equipment Corporation (Digital), enabling the State's local school districts to purchase computer equipment and services from Digital. The agreement, which was negotiated by the office of the Director of Plant and Property Management pursuant to RSA 8:22, sets prices, terms and conditions for the purchase of computer equipment, software and support services. The agreement does not directly commit the use of State funds for the purchase of such items. Rather, the defendants, Governor John Sununu and Department of Education Commissioner Robert L. Brunelle, have proposed that the equipment and services be purchased by the local school districts with surplus revenue from the State's sweepstakes programs.

The defendants, in making their proposal, claimed that $957,677 in surplus sweepstakes revenue for fiscal year 1984 was available to the local school districts and was to be distributed in accordance with RSA 284:21-j (Supp. 1983). The plaintiff, Michael B. King, commenced the instant action under RSA 491:22, seeking to have the court declare that RSA 284:21-j (Supp. 1983) was suspended for fiscal years 1984 and 1985 by Laws 1983, 469:32, II and, thus, that under the present legislative scheme there was no surplus sweepstakes revenue to be distributed to the local school districts under RSA 284:21-j (Supp. 1983).

After reviewing the legislative history of Laws 1983, 469:32, II, the superior court found and ruled that "all moneys" generated by the sweepstakes programs for fiscal years 1984 and 1985 were transferred, by Laws 1983, 469:32, II, to the Department of Education Program Appropriation Unit (PAU) 060303. The court further determined that $4.7 million was the estimated sweepstakes revenue for those years and that such amount was recognized as a source of funds for the various line items in PAU 060303.

The court then reasoned that, because no sweepstakes revenue above $4.7 million was anticipated, there was no legislative directive authorizing expenditure of funds exceeding that amount and, therefore, that the direction to distribute such funds was triggered by operation of law. The court ruled that RSA 284:21-j (Supp. 1983) governed the expenditure of funds exceeding the $4.7 million revenue estimate and that the money could therefore be distributed to the local districts. The plaintiff appealed from that ruling.

We begin our analysis with an examination of the language of the legislative provisions pertaining to the distribution of sweepstakes revenue. In 1963, the legislature created a sweepstakes commission, RSA 284:21-a, and established a statutory mechanism to govern the distribution of moneys received from the State's sweepstakes programs. See RSA 284:21-j (Supp. 1983) (current version of original provision). The legislature provided:

> "The state treasurer shall credit all moneys received from the sweepstakes commission, and interest received on such moneys, to a special fund from which he shall pay all expenses of the commission incident to the administration of this subdivision and RSA 287-E and shall pay out on or before September 15 of each year to the school districts of the state on a flat grant per resident pupil basis any balance in said special fund. Such grants shall be used for educational purposes and no part of said special fund shall be diverted by transfer or otherwise to any other purpose whatsoever."

RSA 284:21-j (Supp. 1983). Hence, under RSA 284:21-j (Supp. 1983), all moneys received by the sweepstakes commission are to be distributed, after deduction of administrative expenses, outside the formal budgetary process to the school districts on a flat grant per resident pupil basis for the exclusive purpose of supporting education.

In 1982, in order to address a shortfall in the general fund, the 1982 special session of the legislature directed that $3 million of the sweepstakes revenue be transferred to the general fund. Laws 1982, 42:29, II. The legislature further provided that any revenue in excess of $3 million be distributed in accordance with RSA 284:21-j. Laws 1982, 42:29, III.

In 1983, the governor proposed that all sweepstakes revenue be transferred to the department of education PAU 060303, financial aid to districts. The legislature thus added the following provision to the State's budget for fiscal years 1984 and 1985:

> "Notwithstanding any other provision of law, the state treasurer shall transfer, after the payment of administrative expenses . . . all moneys deposited into the sweepstakes fund and interest received on such moneys to the department of education PAU 06,03,03 educational financial aid to districts."

Laws 1983, 469:32, II. It is this provision that is at issue here.

The plaintiff argues that the superior court erred in ruling that Laws 1983, 469:32, II governed the distribution of sweepstakes revenue only to the extent of the revenue estimate of $4.7 million and that any revenue in excess of that amount was to be distributed in accordance with RSA 284:21-j (Supp. 1983). It is the plaintiff's position that Laws 1983, 469:32, II controls the distribution of *all* sweepstakes revenue for fiscal years 1984 and 1985.

The plaintiff claimed in his petition for declaratory judgment that RSA 284:21-j (Supp. 1983) had been "suspended" for fiscal years 1984 and 1985. The superior court, stating that the terms "suspended" and "repealed" are synonymous and are used interchangeably, determined that the issue was whether Laws 1983, 469:32, II "repealed" RSA 284:21-j (Supp. 1983). Reasoning that repeal by implication was looked upon with disfavor, *see Board of Selectmen v. Planning Bd.*, 118 N.H. 150, 152–53, 383 A.2d 1122, 1124 (1978), the court ruled that the plaintiff had the burden of establishing with evidence of convincing force that no reasonable construction of the two statutes taken together could be found. *See id.* at 153, 383 A.2d at 1124.

■■ Although we do not disagree with the lower court's statement of the law of this jurisdiction regarding repeal by implication, we conclude that the terms "repeal" and "suspend" are not synonymous. A "repeal" of a statute is effectuated if an entire act or section is abrogated. 1A A. SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION, § 23.0[2] (C. Sands 4th ed. 1972). The "suspension" of a statute "is the temporary displacement of a valid legislative enactment by the execution of a later statute which is to prevail during its limited operation." *Id.* at § 23.30. Suspension is recognized under New Hampshire law. *See* N.H. CONST. pt. I, art. 29 (power of the legislature to suspend laws).

As more fully discussed below, Laws 1983, 469:32, II was enacted as a temporary measure to remedy a severe budget deficit. It was not intended to repeal or abrogate existing provisions of law pertaining to the distribution of sweepstakes revenue. Therefore, the proper focus is on suspension and not on repeal.

■■ "[W]hen a later statute, limited in time of operation, prescribes the controlling law while it is in force upon a subject previously controlled by a statute of permanent operation, a suspension is achieved by implication . . . ." 1A A. SUTHERLAND, *supra* at § 23.20. Of course, inherent in the determination that a later enactment suspends an earlier provision concerning the same subject matter is a finding that there is a conflict between the two statutes. The later enactment only takes precedence over any *conflicting* provisions. *See Roccaforte v. Mulcahey*, 169 F. Supp. 360, 363 (D. Mass.), *aff'd*, 262 F.2d 957 (1st Cir. 1958) ("Where congress expressly limits a change of substantive law to a given fiscal year . . . it is clear that only a temporary suspension of *conflicting* substantive law is intended." (Emphasis added.)). Hence, the issue is whether and to what extent Laws 1983, 469:32, II conflicts with RSA 284:21-j (Supp. 1983).

At the outset, it is important to note that Laws 1983, 469:32, II, by its express terms, applies to sweepstakes revenue. Moreover, use of the introductory clause "notwithstanding any other provision of law" in Laws 1983, 469:32, II, evinces a legislative intent to suspend RSA 284:21-j (Supp. 1983).

■ In this jurisdiction, the words of a statute are interpreted according to their plain and ordinary meaning. RSA 21:2. The plain meaning of the word "notwithstanding" is "without prevention or obstruction from or by" or "in spite of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1545 (1961). In applying the definition of "notwithstanding" to the provision at issue, it becomes apparent that the legislature, in recognition that Laws 1983, 469:32, II conflicted with RSA 284:21-j (Supp. 1983) also dealing with the distri-

bution of sweepstakes revenue, inserted the phrase to express its intent that Laws 1983, 469:32, II was to take precedence over RSA 284:21-j (Supp. 1983). *See Board of Education v. Maple Heights Teachers Ass'n*, 41 O. Misc. 27, 32, 322 N.E.2d 154, 157 (1973). This brings us to the question of the extent of the conflict between Laws 1983, 469:32, II and RSA 284:21-j (Supp. 1983).

As previously stated, the plaintiff argues that Laws 1983, 469:32, II governs the distribution of *all* sweepstakes revenue generated in fiscal years 1984 and 1985 and, consequently, that it completely suspends RSA 284:21-j (Supp. 1983). The defendants contend that although Laws 1983, 469:32, II transfers all moneys to PAU 060303, legislative authorization is necessary to spend those funds. The defendants then reason that because the legislature authorized the spending of only $4.7 million of sweepstakes revenue, the conflict between the two provisions involves only that amount, and the remainder of the sweepstakes funds must be distributed under RSA 284:21-j (Supp. 1983). We disagree.

■ Under a plain reading of the statute, *see* RSA 21:2, the legislature directed that "*all* moneys" (emphasis added) be transferred to PAU 060303. If it had been the legislative intent to limit to $4.7 million (the estimated sweepstakes revenue) the funds transferred, it could easily have done so by providing that "the state treasurer shall transfer moneys deposited into the sweepstakes fund not to exceed a total of $4.7 million in fiscal years 1984 and 1985." *See, e.g.*, Laws 1982, 42:29, II ("state treasurer shall transfer . . . moneys deposited into the sweepstakes fund not to exceed a total of $3,000,000 in fiscal year 1983 . . . ."). "It is well established law that the intention of the legislature expressed by the words in the statute itself is the touchstone of its meaning." *Corson v. Brown Prods., Inc.*, 119 N.H. 20, 23, 397 A.2d 640, 642 (1979).

■ Furthermore, "legislative history is a valuable aid in ascertaining the intended meaning of a particular statute." *State v. Meister*, 125 N.H. 435, 440, 480 A.2d 200, 203 (1984). Our interpretation of Laws 1983, 469:32, II is in harmony with the legislative history of the act.

In an effort to present a "balanced budget," the governor proposed that sweepstakes revenue be used as a source of funds for PAU 060303. The testimony during the hearings before the House Appropriations Committee makes it clear that the legislature understood that, under the proposal, there would be *no* sweepstakes revenue distribution to the local school districts pursuant to RSA 284:21-j (Supp. 1983). *See Hearings on H.B. 500 before the House Appropriations Committee*, February 14, 1983 (comments of Mr.

Connor); February 22, 1983 (comments of Dr. Brunelle and Mr. Denz).

Moreover, our conclusion that the legislature intended that *no* moneys would be distributed under RSA 284:21-j (Supp. 1983) is further underscored by an amendment to House Bill 500, in which the legislature appropriated an additional $3 million in general funds in fiscal years 1984 and 1985 to PAU 060303 to be distributed to the school districts on a flat grant per resident pupil basis. N.H.H.R. JOUR. 285 (1983). The budget was amended in the face of growing concern that it might not pass due to complaints from the public at large about the complete diversion of sweepstakes revenue. *See, e.g., Public Hearings on H.B. 500 before the House Appropriations Committee,* March 14, 1983 (comments of Mr. Bell); March 23, 1983 (comments of Mr. Fletcher).

Accordingly, the plain language of the statute, coupled with its legislative history, clearly indicates that the legislature intended that Laws 1983, 469:32, II control the distribution of *all* sweepstakes revenue in fiscal years 1984 and 1985 and, thus, that RSA 284:21-j (Supp. 1983) was completely *suspended* during those years. *See State v. Mullen,* 119 N.H. 703, 706, 406 A.2d 698, 700 (1979) ("[T]he statute itself, read in its proper context, supplemented by other relevant and reliable extrinsic evidence, such as its legislative history, represents the objective manifestation of the legislative intent.").

The defendants argue that although the intent of the legislature may have been to override the provisions of RSA 284:21-j (Supp. 1983), it did not effectively do so. It is the defendants' position that because legislative authorization is necessary to spend the sweepstakes revenue, *see State v. Kimball,* 96 N.H. 377, 380, 77 A.2d 115, 119 (1950), and because the legislature has appropriated only $4.7 million of the sweepstakes revenue, any additional moneys must be distributed under RSA 284:21-j (Supp. 1983). The defendants' argument fails for two reasons.

First, the defendants confuse the word "appropriation" with the term "revenue estimate." Under New Hampshire law, the governor is required to submit a proposed budget which sets out both recommended expenditures and the means of funding those expenditures. *See* RSA 9:3. Accordingly, a review of the budget for fiscal year 1984 reveals that a total of $11,574,045 was appropriated for the various line items in PAU 060303. *See* Laws 1983, 469:1. The *estimated source of funds* for the appropriation included: (1) $6,764,045 from the general fund; (2) $110,000 from unorganized districts; and (3) $4,700,000 from sweepstakes revenue. *See id.*

The legislature did not "appropriate" $4.7 million in sweepstakes revenue. Rather, it "appropriated" $11,574,054 to the department of

education PAU 060303, financial aid to districts. The $4.7 million figure represents a revenue estimate, which is included in the budget to indicate the availability of revenue to fund the appropriation. Once "all moneys" in the sweepstakes fund are transferred to PAU 060303 under Laws 1983, 469:32, II, it is the budget which authorizes the expenditure of those funds. Under Laws 1983, 469:1, the sweepstakes revenue may be used as a revenue source to fund the various line items in PAU 060303, up to the $11,574,045 that the legislature appropriated.

Second, because "all moneys" were transferred out of the sweepstakes fund, there was no revenue to which RSA 284:21-j (Supp. 1983) could apply under a plain reading of that provision. Instead, any sweepstakes revenue not needed to fund the appropriation is now part of the general fund, subject to further appropriation as the legislature and governor see fit. *See, e.g.,* H.B. 374 (1985).

Because we conclude that Laws 1983, 469:32, II governs the distribution of *all* sweepstakes revenue in fiscal years 1984 and 1985, we must reverse the superior court's ruling.

*Reversed.*

All concurred.