Request of the House of Representatives
No. 85-164

# OPINION OF THE JUSTICES

May 10, 1985

The following resolution, House Resolution Number 30, requesting an opinion of the justices, was adopted by the House of Representatives on April 18, 1985, and filed with the Supreme Court on April 19, 1985:

"Whereas, the House of Representatives has before it HB 400, An Act making appropriations for the expenses of certain departments of the state for fiscal years ending June 30, 1986, and June 30, 1987; and

"Whereas, questions have been raised as to the constitutionality of certain provisions of HB 400 in light of the recent adoption of Article 18-a of Part II of the New Hampshire Constitution which prohibits certain types of provisions in any budget bill; and

"Whereas, the House of Representatives is scheduled to act on HB 400 in the near future, but will have an opportunity to act again on HB 400 after HB 400 has gone through the legislative process in the Senate; and

"Whereas, there is an urgent need to resolve the questions concerning the constitutionality of HB 400 in the most expeditious manner possible; now, therefore, be it

"Resolved by the House of Representatives:

"That the Supreme Court is respectfully requested to give their opinion upon and answer the following questions as soon as it may be possible:

"1. Do any of the provisions after section one of HB 400 violate Article 18-a, Part II or any other provision of the New Hampshire Constitution?

"2. If the answer to question 1 is in the affirmative, which provisions do violate the Constitution?

"That the clerk of the House transmit copies of this resolution and HB 400 to the Justices of the New Hampshire Supreme Court."

The following answer was returned:

*To the House of Representatives:*

The undersigned justices of the supreme court reply as follows to the questions contained in your resolution of April 18, 1985, filed with this court on April 19, 1985. Interested parties were permitted to submit memoranda to the Court until April 30, 1985.

A chart prepared by the Research Division of the Office of Legislative Services illustrates the increasing use of budget sections and appears as an Appendix to this opinion.

As one memorandum submitted to us observed:

> "The practice of adding footnotes really began in the early 1970's. Then Governor Thomson exercised the Gubernatorial veto much more frequently than previous chief executives, and threatened its use even more often. The result was that legislators who wanted to avoid that veto began attaching their bills as amendments or footnotes to the operating budget. By attaching some that the Governor wanted along with others the Governor did not want and probably would have vetoed, the Governor was forced to accept the whole package or nothing. By adding the footnotes the legislature gave themselves bargaining chips with which to negotiate with the Governor. Because the leadership in the House and Senate controlled the Committee of Conference on the budget, the negotiating was done behind closed doors without the input of the non-leadership representatives or the public. The representatives also faced an all or nothing choice when the Conference Committee report came back to the floor at the end of the legislative session."

Memorandum of Common Cause/New Hampshire at 4.

Resolution 60, introduced in the 1984 Constitutional Convention,

sought to address dissatisfaction with this practice of effectuating changes to general statutory law in budget footnotes. On June 26, 1984, the Legislative Department Committee reported the resolution out by a 12 to 8 vote, recommending that it was inexpedient to amend the constitution as proposed. JOURNAL OF CONSTITUTIONAL CONVENTION 299 (1984). The minority report offered an amended version of Resolution 60 with the following comment:

> "This resolution would prevent infamous footnotes which have appeared in increasing numbers in recent years. These footnotes have enacted midnight department head pay raises, unconstitutional minimum business profits taxes, Sunday dog racing in Seabrook contrary to the town's wishes and other such legislation."

*Id.*

Delegate Jacobson, in support of the minority report, stated:

> "First of all, I think it is important to remember that there are two kinds of footnotes or sections. One kind is fiscal in character. It is financial management of the budget entries. That kind, which constitutes the majority of the sections, is not touched in this proposal. The footnotes that are touched are those that amend, repeal or enact statutory law."

*Id.* at 302. Delegate Tamposi, also a legislator, observed:

> "[U]nless we address and stop these abuses today, they will never be addressed by the Legislature, because as a legislator, I can tell you that they are tooled to our advantage. They are something that expedites the process, and we will never, never, I submit to you, we will never close those loopholes, and we will never reform ourselves, because they are used to our advantage."

*Id.* at 304.

By a vote of 301 to 34, the Constitutional Convention voted to submit part II, article 18-a to the voters. JOURNAL OF CONSTITUTIONAL CONVENTION 310 (1984). By a vote of 262,408 to 62,030, on November 6, 1984, an 80.8% popular approval, the voters approved article 18-a in the following form:

> "[Budget Bills.] All sections of all budget bills before the general court shall contain only the operating and capital expenses for the executive, legislative and judicial branches of government. No section or footnote of any such budget bill shall contain any provision which establishes, amends or repeals statutory law, other than provi-

sions establishing, amending or repealing operating and capital expenses for the executive, legislative and judicial branches of government."

The House of Representatives now asks us whether, in light of article 18-a, any provisions of House bill 400, the budget act, *after* section 1, are in contravention of the "no footnote" amendment to the constitution. We answer in the affirmative. To avoid an excessively long opinion, we will not quote, verbatim, the 26 pages of footnotes or sections appearing in House bill 400 and the 6 pages of amended sections, as filed with this court.

Many of the items in House bill 400 are unobjectionable under article 18-a in that they are "provisions establishing, amending or repealing operating and capital expenses" for the three branches of government. In other words, they "explain the text of the appropriations and operating expenses" or constitute "financial management of budget entries," without effectuating any changes to general statutory law. *See* JOURNAL OF CONSTITUTIONAL CONVENTION 302 (1984) (comments of Del. Jacobson) (financial management of budget entries not touched by the proposal); *id.* at 303 (comments of Del. Chase) (any addition to the budget which explains the budget and describes the use of the money, the controls of the money and things of that sort is permitted); *id.* at 354 (comments of Del. Hall) (footnotes that explain the text of the appropriations and operating expenses are permitted). For example, section 2 explains the funding of a certain Program Appropriation Unit; section 18 abolishes a number of budgeted positions in the classified service; and section 38 permits the transfer of unappropriated general fund surplus to the unappropriated fish and game fund surplus.

In addition, article 18-a is not offended by the use of budget sections to attach certain conditions to expenditures or to make fiscal events contingent upon certain happenings, so long as those sections do not effectuate a change in general statutory law. For instance, section 8 provides for emergency appropriations in the event that the replacement of a motor vehicle becomes necessary. And, in section 36, a number of guard positions at the State prison are made contingent upon the inmate population. Different spending levels are authorized if the inmate count rises from 575 to 600.

Although the above sections are clearly permitted by article 18-a, there are a number of sections that are prohibited by that provision. Before addressing those sections, however, we must decide, as a preliminary matter, whether the convention delegates and voters of this State, in using the phrase "establish, repeal or amend," intended that certain sections or footnotes escape the mandates of article 18-a by effectuating changes to general statutory law by the use of lan-

guage such as "waives," "suspends" and "notwithstanding any other provisions of law."

As more fully discussed below, a review of House bill 400 reveals that although a number of its sections displace or make changes to existing laws, virtually no section makes such a change by providing for the express "establishment," "repeal" or "amendment" of general statutory law. Rather, many of the sections provide for the suspension of certain revised statutes, or premise their contents with the phrase, "notwithstanding any other provisions of law." Hence, we must determine whether article 18-a encompasses those sections.

██ "In construing the Constitution, as in the case of any other writing, 'it is the duty of the court to place itself as nearly as possible in the situation of the parties at the time the instrument was made, that it may gather their intention from the language used, *viewed in the light of the surrounding circumstances.*'" *Attorney-General v. Morin*, 93 N.H. 40, 43, 35 A.2d 513, 514 (1943) (quoting *Weed v. Woods*, 71 N.H. 581, 583, 53 A. 1024, 1025–26 (1902) (emphasis added)). We often have referred to the history of a constitutional amendment in interpreting its meaning. *See Opinion of the Justices*, 121 N.H. 429, 432, 430 A.2d 188, 190 (1981); *see also Appeal of Omni Communications, Inc.*, 122 N.H. 860, 861–62, 451 A.2d 1289, 1290 (1982). In construing the constitutional amendment at issue, we will look to its purpose and intent, bearing in mind that we will give the words in question the meaning they must be presumed to have had to the electorate when the vote was cast. *See Opinion of the Justices*, 101 N.H. 541, 542, 133 A.2d 790, 792 (1957); *see also Smith v. State*, 118 N.H. 764, 768, 394 A.2d 834, 838 (1978).

A review of the history of article 18-a makes clear that the constitutional amendment was proposed to prohibit footnotes or sections altering general statutory law from being inserted into budget bills. *See, e.g.*, JOURNAL OF CONSTITUTIONAL CONVENTION 299–300 (1984) (comments of Del. Phelps) (footnotes which "change" general statutory law have no place in the budget bill; items that "alter" statutory law have to go through the legislative process); *id.* at 303 (comments of Del. Chase) (method of attaching footnotes that "change" statutes, "make" new departments or do things of this kind, sidesteps legislative review); *id.* at 354 (comments of Del. Hall) (amendment will prevent footnotes that "change" statutory law). It is clear that the delegates and the voters of this State intended to prohibit amendments or enactments of general statutory law by means of footnotes or sections in the budget bill. Hence, to the extent that the content of a budget section or footnote effectuates a change in general statutory law, that section or footnote would appear to violate article 18-a.

■■ Although the terms "suspend" and "repeal" are not synonymous, *see King v. Sununu,* 126 N.H. 302, 306, 490 A.2d 796, 799 (1985), as noted by Delegate LaMott, a suspension is, in essence, the repeal of a law for a time certain. JOURNAL OF CONSTITUTIONAL CONVENTION 308 (1984). In fact, when asked, specifically, whether article 18-a would permit changes to statutory law by use of the terms "suspension" or "notwithstanding any other provision of law," Delegate LaMott answered in the negative. *See id.* We conclude that when a budget footnote or section alters the normal effect of a general statute, regardless of whether the section expressly "establishes," "amends" or "repeals" a statute, the section or footnote will be deemed to have effectuated a change in general statutory law within the meaning of article 18-a. Consequently, such a change will be deemed to have no legal effect. However, such a change may be effected by legislation separate from the budget bill.

■■ With respect to the use of the phrase "notwithstanding any other provision of law," it is clear that the use of such a phrase, in and of itself, does not render a section or footnote violative of article 18-a. To the extent that a footnote or section containing this phrase relates solely to an expenditure or fiscal matter, it will be valid. However, the result must be otherwise if there is a conflicting provision of general statutory law, whether or not that provision is identified, or if there is no current statute, but the section or footnote would establish new general statutory law. In these cases, the section or footnote will either establish, amend or repeal general statutory law, in violation of article 18-a.

■ To illustrate the problem, section 17, II states, in pertinent part: "Notwithstanding any other provision of law, the state treasurer shall transfer . . . all moneys deposited into the sweepstakes fund . . . to the department of education PAU 06,03,02,01 . . . ." Although that section makes no specific reference to RSA 284:21-j (Supp. 1983), it is clear that the section suspends, for the biennium, the distribution of sweepstakes revenues in the manner provided by RSA 284:21-j (Supp. 1983). *See King v. Sununu,* 126 N.H. 302, 308 490 A.2d 796, 801 (1985). Accordingly, section 17, II violates the provisions of article 18-a.

■ To the extent that certain other sections enact, modify, suspend or displace a general statutory provision, they too are violative of article 18-a. Section 3 of House bill 400 suspends the millage formula provided by RSA 187-A:7 (Supp. 1983). This constitutes a constructive repeal of the statute for the biennium and therefore violates article 18-a. A similar result occurs with the provisions of sec-

tion 6 (RSA 284:2; RSA 284:23 (1977 and Supp. 1983), RSA 284:25 and RSA 284:25-a suspended for the biennium).

Succeeding sections present further problems: section 7 (appearing to enact a general statute as well as to amend RSA 21-I:11, II (Supp. 1983)); section 9 (RSA 186-B:9 to :15 (1977 and Supp. 1983) limited in application for the biennium); section 12 (RSA 188-F:15 (Supp. 1983) procedure altered for setting tuition); section 15 (RSA 9:25 suspended for the biennium); section 25 (notwithstanding provisions of RSA 178-A:21, II (Supp. 1983)); section 27 (notwithstanding RSA 4:40 (Supp. 1983) and RSA 10:4 (Supp. 1983)); section 29 (notwithstanding RSA 167:18-b); section 30 (RSA 167:7 (Supp. 1983) suspended for the biennium); section 31 (RSA 167:8 suspended for the biennium); section 32 (RSA 167:5 suspended for the biennium); section 33 (waives provisions of RSA 124:14 (Supp. 1983)); section 35 (notwithstanding RSA 99:4 and RSA 9:17-a to :17-c (1970 and Supp. 1983)); and section 45 (changes RSA 14:27-b).

█ There are two other areas worth noting. Sections 26 and 37 authorize bond issues. These sections do not conflict with article 18-a. As for section 21, this is duplicative of standing statutory law and need not be re-enacted with every budget. *See* RSA 490:2, VI; RSA 491:2, VI and RSA 502-A:6-a, VI (Supp. 1983).

Thorough research and more time would be necessary to clarify whether a statute conflicts with the provisions of sections 20 and 28, although they appear to be in accord with article 18-a. Section 23, however, appears to establish a new general rule that would otherwise be a statute and thus is prohibited by article 18-a.

█ With regard to the amendments to House bill 400 contained in the House Record for April 19, 1985, we see no problem with section 19 as amended, but whether it conflicts with any statute is not self-evident. Sections 42 and 43 are appropriation items keyed to a possible loss of federal funding and are permitted.

█ The State employees' pay raise contained in section 44 of House bill 400 as amended requires the *amendment* of tables in RSA 94:1-a (Supp. 1983), RSA 99:1-a (Supp. 1983) and RSA 491-A:1. This provision conflicts with article 18-a because it "amends . . . statutory law," and, therefore, cannot be part of the budget bill. Sections 40–41 and 46–47 are in accord with article 18-a as are any provisions of House bill 400 which are not otherwise dealt with above.

Before concluding we wish to note that your questions are broad enough to seek our opinion on the applicability of every provision of the Constitution to every budget footnote or section. To give such a comprehensive opinion would be impossible within the time that any

answer would be helpful to you. Since we understand from your questions that your primary concern is with the applicability of article 18-a, we have confined our opinion to the effect of that article. We therefore respectfully request to be excused from commenting on the possible applicability of other constitutional provisions as a part of this opinion. We must also note that within reasonable time limits there is no practical method to review the provisions of every general statute for possible conflict with proposed footnotes or sections. Our preceding opinion therefore reflects the best review of the general law that we have been able to make in the time available to us. We cannot, however, guarantee that we have been able to address every possible issue that may be raised under article 18-a.

> JOHN W. KING
> CHARLES G. DOUGLAS, III
> DAVID A. BROCK
> WILLIAM F. BATCHELDER
> DAVID H. SOUTER

*Frederick J. Griffin, Jr.,* filed a memorandum on behalf of the House of Representatives.

*Backus, Meyer & Solomon,* of Manchester (*Jon Meyer*), and *Betty Hall* filed a memorandum on behalf of Common Cause/New Hampshire.

**APPENDIX**

NUMBER OF BUDGET SECTIONS
1973–1985
(See notes on next page)

NUMBER OF
BUDGET SECTIONS

LEGISLATIVE SESSION

## NUMBER OF BUDGET SECTIONS
### 1973–1985

Each bar represents the number of sections adopted as part of the budget during each of these legislative sessions, not including the major appropriation section showing the breakdown of appropriations by program appropriations units (PAU's).

\* Although 1982 was a Special Session, a complete budget, not a supplemental budget, was adopted.

@ The figure for 1985 represents the number of sections (other than the major appropriation section) contained in the proposed operating budget (HB 400) as adopted by the House.

(Prepared by the Research Division, Office of Legislative Services)