Request of the House of Representatives
No. 92-132

OPINION OF THE JUSTICES
(Solid Waste Disposal)

May 6, 1992

The following Resolution No. 60, requesting an opinion of the justices, by the house of representatives was adopted on March 5, 1992, and filed with the supreme court on March 6, 1992:

"Whereas, there is pending in the House, House Bill 1301-FN, An Act setting priorities for the disposal of certain components of the solid waste stream; and

"Whereas, an amendment has been proposed to HB 1301-FN; and

"Whereas, doubt has arisen as to the constitutionality of the provisions of said bill; and

"Whereas, it is important that the constitutionality of said provisions should be settled in advance of the enactment of HB 1301-FN; now, therefore, be it

"Resolved by the House of Representatives:

"That the Justices of the Supreme Court be respectfully requested to give their opinion on the following question of law:

1. Would the prohibition on the disposal, composting or incineration or on contracting for the disposal, composting or incineration of certain recyclable materials beginning January 1, 1994, imposed by RSA 149-M:22 as amended by the proposed amendment, constitute an illegally mandated state program or responsibility under Part I, Article 28-a of the New Hampshire Constitution?

"That the clerk of the house of representatives transmit copies of this resolution and HB 1301-FN, and the proposed amendment to the justices of the New Hampshire Supreme Court."

The following response is respectfully returned.

*To the Honorable House of Representatives:*

The undersigned justices of the supreme court now submit the following reply to your question of March 5, 1992. Following our receipt of your resolution on March 6, 1992, we invited interested parties to file memoranda with the court until March 27, 1992. The date was later extended to April 14, 1992.

Part I, article 28-a of the New Hampshire Constitution, which was ratified by the required two-thirds majority of the citizens of the State on November 6, 1984, provides that:

> "The state shall not mandate or assign any new, expanded or modified programs or responsibilities to any political subdivision in such a way as to necessitate additional local expenditures by the political subdivision unless such programs or responsibilities are approved for funding by a vote of the local legislative body of the political subdivision."

We have, on a prior occasion, examined this provision.

█ In *N.H. Munic. Trust Workers' Comp. Fund v. Flynn, Comm'r,* 133 N.H. 17, 573 A.2d 439 (1991), we stated that "the amendment was designed to prohibit the State from placing additional obligations on local government without either obtaining their consent or providing the necessary funding." *Id.* at 22, 573 A.2d at

443. We held in *Flynn* that "the constitutionality of a particular State mandate under article 28-a does not hinge solely on whether or not it may be categorized as a new, expanded or modified program, but also on whether or not the mandate imposes upon local government an additional fiscal obligation." *Id.* at 23, 573 A.2d at 443. The primary consideration is the net effect of the program. *Id.* Invoking the constitutional prohibition requires both a mandate of responsibility to the political subdivision and a requirement of additional local political subdivision expenditures by virtue of the mandate.

■ In order to determine whether House Bill 1301-FN constitutes a cost-creating mandate in contravention of part I, article 28-a, we must examine the language of the proposed statute in the context of existing RSA chapter 149-M. We will interpret a statute, when possible, in a manner consistent with its plain meaning. *Petition of Jane Doe*, 132 N.H. 270, 276–77, 564 A.2d 433, 438 (1989). Our examination of the particular statute at issue is made in relation to the overall statutory scheme. *Appeal of Richards*, 134 N.H. 148, 161, 590 A.2d 586, 594, *cert. denied*, 112 S. Ct. 275 (1991).

RSA chapter 149-M, titled "Solid Waste Management" (the Chapter) is an expansive solid waste management statute. It calls upon the State, through the division of waste management, to conduct comprehensive solid waste planning and to regulate and enforce the State's solid waste laws. RSA 149-M:2, :3. It also calls upon the towns to provide, or to assure access to, solid waste facilities. RSA 149-M:13, I (Supp. 1991). The Chapter includes various substantive provisions and delegates rule-making authority to the division of waste management. RSA 149-M:8, IV. It includes a definitional framework for interpretation of the Chapter. RSA 149-M:1. The purpose of House Bill 1301-FN is to effect a change in the substantive provisions of the Chapter that will "strive to manage solid waste in a manner that makes optimal use of each component of the solid waste stream." Proposed RSA 149-M:1, II-a. To that end, the proposed bill would repeal RSA 149-M:22 and substitute:

"Consistent with RSA 149-M:1-a, [and proposed section] II-a, the department [of environmental services] shall restrict or prohibit the disposal of certain components of the solid waste stream when it determines that:
(a) Disposal of the material presents a potential adverse impact to public health, safety or the environment;

(b) A restriction or prohibition will result in the extension of the useful life or capacity of a facility or class of facilities; or

(c) A preferred and feasible alternative exists for handling a given component consistent with the hierarchy set forth in RSA 149-M:1-a."

The repealed section, entitled "Refuse Recycling or Reduction," sought to reduce the solid waste stream by mandating target reductions, providing incentives for recycling and providing disincentives for some forms of disposal. RSA 149-M:22. An amendment in 1990 prohibited the disposal of wet-cell batteries at any solid waste facility. RSA 149-M:22, V (Supp. 1991). In addition to calling upon the department of environmental services to manage the solid waste stream, House Bill 1301-FN provides the department with specific authority to restrict or prohibit disposal of certain solid waste stream components on satisfaction of certain determined conditions. The proposed replacement section sets forth the following statutory prohibitions:

"No person shall dispose of, compost or incinerate or contract for the disposal or incineration of the following materials except as indicated below. No landfill, composting facility or incinerator shall accept the restricted materials except to permit the layover of such materials on their processing course . . . . No person shall dispose of, compost or incinerate:

(a) Aluminum containers after January 1, 1994.
(b) Metal or glass containers after January 1, 1994.
(c) Recyclable plastics after January 1, 1995.
(d) Recyclable paper after January 1, 1996."

Proposed RSA 149-M:22, II. It is this provision that forms the basis for your opinion request.

We find that House Bill 1301-FN does not violate part I, article 28-a of our State Constitution. It is not a State "mandate" requiring the recycling of certain goods, imposing responsibilities on, and necessitating expenditures by, political subdivisions. Rather, it prohibits disposal of certain goods by the solid waste generator, and prohibits acceptance of those goods by a landfill, composting facility or incinerator for disposal.

■ Every town in this State is currently required to "either provide, or assure access to, an approved solid waste facility for its residents." RSA 149-M:13, I (Supp. 1991). "Solid waste" is defined as

"any matter consisting of putrescible material; refuse; or residue from an air pollution control facility; and other discarded or abandoned material. It includes solid, liquid, semisolid or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities."

RSA 149-M:1, XIX (Supp. 1991). A "[f]acility means a location or system for: [r]esource recovery; [r]ecycling[;] [or] [c]ollection, source separation, storage, transportation, processing, treatment, or disposal of solid waste." RSA 149-M:1, VIII. We discern that the definitional description of "facility" operations was intended by the legislature to be disjunctive and, therefore, resource recovery and recycling is not part of the "solid waste facility" mandate in RSA 149-M:13, I (Supp. 1991) either in its present or in its pre-article 28-a form. We understand RSA 149-M:13, I (Supp. 1991) to require each town to provide or assure access to a facility where its residents may dispose of solid waste. It does not require that a town provide its residents with the means to recycle.

House Bill 1301-FN seeks to refine what is meant by "solid waste." It restricts the disposal, compost, or incineration of certain materials; namely, aluminum, metal, and glass containers, recyclable plastics, and recyclable paper. Proposed RSA 149-M:22, II. Its effect is to prohibit the disposal of these enumerated materials at solid waste facilities; it defines by exclusion those goods that may be disposed of in the solid waste stream.

■ There is no requirement in RSA chapter 149-M that a town operate, or even assure access to, a recycling facility. House Bill 1301-FN would seem to provide municipalities with the option of either operating a recycling facility or of allowing its residents to make their own provisions for disposal of those materials outside of the solid waste stream. Although the practical effect in most towns and cities may be the establishment or continuation of resource recovery or recycling operations, this effect is not mandated by the proposed amendment. Political subdivisions remain free to allow any costs resulting from the proposed restrictions to be borne directly by their residents. The local legislative body will have the last word on both the program and the funding.

House Bill 1301-FN does not constitute an illegally mandated State program or responsibility in violation of part I, article 28-a of the New Hampshire Constitution. Accordingly, the question of the House of Representatives is answered in the negative.

DAVID A. BROCK
WILLIAM F. BATCHELDER
WILLIAM R. JOHNSON
W. STEPHEN THAYER, III
SHERMAN D. HORTON, JR.

May 6, 1992

*John P. Arnold,* attorney general (*George Dana Bisbee,* deputy attorney general, on the memorandum), filed a memorandum in support of a negative answer to the question presented.

*H. Bernard Waugh, Jr.,* of Concord, filed a memorandum on behalf of the New Hampshire Municipal Association, in support of a negative answer to the question presented.

*Representative Amanda A. Merrill,* of Strafford, filed a memorandum in support of a negative answer to the question presented.

*Cook & Molan P.A.,* of Concord (*Richard E. Molan* and *Biron Bedard*), filed a memorandum on behalf of Waste Management of New Hampshire, Inc. and Consumat Sanco, Inc., in support of an affirmative answer to the question presented.

*Representative Elizabeth S. Millard,* of Merrimack, filed a memorandum in support of an affirmative answer to the question presented.

*David Kibbey,* of Newport, filed a memorandum in support of an affirmative answer to the question presented.

*Nighswander, Martin & Mitchell, P.A.,* of Laconia (*Gail M. Lynch*), filed a memorandum on behalf of Wheelabrator Environmental Systems Inc., in support of an affirmative answer to the question presented.