Hillsborough
No. 90-314

CHRISTOPHER C. FINLAY

v.

ANTHONY J. FREDERICK, JR.

May 1, 1992

484

*Law Offices of K.S. Williams-Hardy*, of Epping, and *Currier, Zall, Durmer, Shepard and Barry P.A.*, of Nashua (*Kathryn Swain Williams* and *William H. Barry, III*, on the brief, and *Ms. Williams* orally), for the plaintiff.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Kevin M. Fitzgerald* and *Kevin M. Leach* on the brief, and *Mr. Fitzgerald* orally), for the defendant.

THAYER, J. The defendant appeals from an order of the Superior Court (*Dunn*, J.) entitling the plaintiff to a commission on the lease and sale of the defendant's property in Bedford. The defendant challenges several of the court's rulings, including: (1) that the plaintiff procured a ready, willing and able buyer; (2) that the defendant owes the plaintiff a commission regardless of who sold the property; (3) that the plaintiff is entitled to a commission on the lease of the property; (4) that the listing agreement was not terminated by either party; (5) that the plaintiff did not breach his duty of good faith and fair dealing owed to the defendant; and (6) that the meaning of the term "lease" in the listing agreement included a lease of less than the entire property. For the following reasons, we affirm.

On March 29, 1985, the plaintiff, Christopher C. Finlay, President of the Finlay Company, and the defendant, Anthony J. Frederick, Jr., entered into a listing agreement (the Agreement) which provided that the plaintiff would receive a commission upon lease or sale of the property located at 273 Daniel Webster Highway, Bedford, known as the Frederick Business Center (the property). The terms of the Agreement provided that it would remain in effect for one year, continuing thereafter until either party elected to terminate the Agree-

ment by giving the other party thirty days written notice. In March 1985, the principals of Office Information Systems (OIS) contacted the plaintiff and inquired about leasing office space for their business. The plaintiff showed the defendant's property to OIS. Subsequently, the plaintiff and OIS prepared a purchase and sales contract for the property which the plaintiff presented to the defendant. The defendant did not accept the purchase and sales contract, but instead made a counter offer proposing a higher sales price and the lease of a portion of the property to OIS. A second proposal, dated April 4, 1985, was then drafted by the plaintiff and OIS and presented to the defendant. The defendant rejected the second purchase and sales contract.

In early May 1985, OIS learned from the defendant that one of the major tenants of the property was not current on its rent. The defendant claims that he had earlier instructed the plaintiff to inform OIS of that arrearage. OIS then notified the defendant that they would no longer engage in negotiations regarding lease or purchase of the property because OIS felt that the plaintiff had intentionally failed to disclose the rental payment arrearage to them.

The plaintiff had no contact with OIS after May 24, 1985, and testified that he thought the negotiations among himself, the defendant and OIS were a "dead deal." OIS and the defendant, however, entered into direct negotiations and on May 31, 1985, signed a five-year lease for a unit in the property. Also on that date, OIS and the defendant entered into an option agreement, which provided OIS with the exclusive right to purchase the property within three years of April 15, 1985, for $475,000. On August 20, 1987, the defendant sold the property to 273 Associates for $522,500. The two principals of OIS, David Young and Charles Linatsis, are the general partners of 273 Associates.

First, the defendant contends that the court erred in ruling that the plaintiff procured a ready, willing and able buyer for the property because OIS refused to negotiate with the plaintiff and because the proposed deal was "financially impossible" for OIS. "[T]his court will not disturb the trial court's findings or rulings unless they are not supported by the evidence or are erroneous as a matter of law." *N.H. Munic. Trust Workers' Comp. Fund v. Flynn, Comm'r*, 133 N.H. 17, 21, 573 A.2d 439, 441 (1990). The Agreement states that "[i]f a ready, willing and able buyer is procured before the expiration of this Agreement, the owner(s) agree(s) to pay THE FINLAY COMPANY a fee for professional services of (8%) eight percent of

the actual sales price." The law is clear in this State that a broker is entitled to a commission under such an agreement if the broker procures a willing and able buyer. *93 Clearing House, Inc. v. Khoury*, 120 N.H. 346, 349, 415 A.2d 671, 673 (1980). A broker procures a buyer if the broker informs a customer of the property under agreement and leads the customer to the seller. *Kopka Real Estate, Inc. v. MacLeod*, 119 N.H. 547, 549, 404 A.2d 298, 299 (1979).

■ The evidence is clear that the plaintiff informed OIS of the property and led OIS to the seller; therefore, the trial court correctly found that the plaintiff procured OIS. In addition, the trial court's finding that OIS was a willing and able buyer is supported by the evidence. The second offer presented to the defendant by the plaintiff on March 4, 1985, when the plaintiff was still involved in negotiations, was for a sales price of $475,000. On May 31, 1985, the defendant entered into an option-to-purchase contract directly with OIS for a sales price of $475,000, "compounded by 1.1% each anniversary," which OIS later exercised. Thus, the evidence shows that the plaintiff procured a willing and able purchaser for the property, because the principals of OIS under the terms of the OIS option in fact did purchase the property on terms nearly identical to those previously negotiated by the plaintiff but rejected by the defendant.

Second, the defendant argues that the plaintiff is not entitled to a commission because the language of the Agreement does not preclude the defendant from selling his own property or obligate him to pay a commission if he does sell the property. The trial court found that the Agreement provided the broker with the exclusive right to sell, and therefore the plaintiff was entitled to a commission regardless of whether the defendant, the plaintiff or a third party sold the property. The defendant argues that the Agreement was an exclusive listing agreement rather than an exclusive right-to-sell agreement and therefore, while the defendant could not list the property with another broker, he did retain the right to sell the property without obligating himself to pay a commission to the plaintiff. The Agreement states that the defendant "gives THE FINLAY COMPANY the exclusive right to sell said property . . . ."

■ The defendant urges us to follow *Holiday Homes of St. John, Inc. v. Lockhart*, 678 F.2d 1176 (3d Cir. 1982), which held that the words "exclusive right to sell" are ambiguous and do not determine whether the right to sell is exclusive only of other brokers, or exclusive of the owner as well. In this case, however, we need not decide whether the parties intended to preclude only other brokers or the

owner himself from selling the property because the Agreement provides that "[i]f a ready, willing and able buyer is procured before the expiration of this Agreement, the owner(s) agree(s) to pay THE FINLAY COMPANY a fee for professional services of (8%) eight percent of the actual sales price." As discussed above, the plaintiff, not the defendant, procured OIS, who purchased the property. Because the plaintiff procured a ready, willing and able buyer, the plaintiff is entitled to a commission by the terms of the contract.

Third, the defendant argues that the plaintiff was not the "effective cause" of the lease because the plaintiff was not involved in lease negotiations with OIS, and therefore the plaintiff is not entitled to a commission. The Agreement states that:

> "If a lease of said property is negotiated before the expiration of this Agreement, the owner(s) agree(s) to pay THE FINLAY COMPANY a leasing commission of 5% of the rent of the first three years, 4% of the rent of the second three years, and 3% of the rent thereafter .... The commission for the entire term is due and payable upon the signing of the lease. If the property is sold or leased within one year of the termination of this Agreement to any party who had made inquiry to THE FINLAY COMPANY or to the owners during the continuance of this Agreement, the owner(s) hereby agree(s) to pay the above stated fees."

The defendant cites the Restatement of Agency § 448, at 1050 (1933) which states that "[a]n agent whose compensation is conditional upon his accomplishment of a specified result is entitled to the agreed compensation if, and only if, he is the effective cause of accomplishing the result." For example, if the Agreement is one for procuring a ready, willing and able buyer then the broker is entitled to a commission if the broker is the effective cause of procuring such a buyer. *Philbrick v. Chase*, 95 N.H. 82, 84, 58 A.2d 317, 319 (1948). Here, the lease portion of the present Agreement provides for payment of the commission if "a lease of said property is negotiated." Therefore, the plaintiff must have been the effective cause of negotiating the lease in order to be entitled to the commission.

■■ The trial court found that the plaintiff was the effective cause of the lease. Again, we will not disturb the trial court's finding unless it is unsupported by the evidence or erroneous as a matter of law. *N.H. Munic. Trust*, 133 N.H. at 21, 573 A.2d at 441. The trial court's finding that the plaintiff initiated and participated in the lease negotiations is supported by the evidence. The record is clear

that the plaintiff brought the defendant and OIS together; thus the lease negotiations were made possible by the plaintiff's procurement of OIS. In addition, the plaintiff negotiated two purchase and sales agreements with OIS and the defendant, both of which the defendant rejected, and the defendant made a counter offer contemplating the lease of a portion of the property, which the plaintiff presented to OIS. "The fact that the owner personally or through agents carries on negotiations that lead to the purchase does not deprive the broker of his commission." *Williams v. Walker*, 95 N.H. 231, 234, 61 A.2d 522, 524 (1948); *see also Belleau v. Hopewell*, 120 N.H. 46, 52, 411 A.2d 456, 460 (1980) (not necessary for broker to participate in final negotiations leading to sale). That principle applies equally to the lease of property that the broker is authorized to lease. The trial court's finding that the plaintiff was entitled to a commission when OIS leased the property is therefore not in error.

Fourth, the defendant argues that the Agreement had been terminated prior to the lease and sale of the property. The Agreement was signed by the parties on March 29 and 30, 1985, and was to be "in effect for a period of one year, continuing thereafter until either party elects to terminate the Agreement by giving the other party thirty (30) days written notice of same." The Agreement stated that "[i]f the property is sold or leased within one year of the termination of this Agreement to any party who had made inquiry to THE FIN-LAY COMPANY or to the owners during the continuance of this Agreement, the owner(s) hereby agree(s) to pay the above stated fees."

■■ The trial court found that the Agreement was still in effect at the time of the lease and sale because neither party gave the other written notice of termination as required by the Agreement. The defendant argues that written notice was not necessary because the defendant gave the plaintiff information manifesting the defendant's desire to terminate the Agreement. Specifically, the defendant cites a letter that he sent to the plaintiff dated July 1, 1985, as notice of termination. The letter informed the plaintiff that the defendant would pay him no commission on the lease of the property. Regardless of whether the letter constituted termination of the Agreement, this argument fails because the lease and option-to-purchase agreements were entered into on May 31, 1985, prior to the July 1, 1985 letter. Thus, the lease was consummated prior to any notice of termination of the Agreement and "the commission for the entire term is due and payable upon the signing of the lease." Likewise, the option-

to-purchase contract, which was entered into on the same day as the lease, also preceded any notice of termination of the Agreement. Because the Agreement was in effect when the option to purchase was given, and because the option was subsequently exercised, the plaintiff is entitled to a commission on the sale, regardless of whether the option was exercised after termination of the Agreement. To hold otherwise would allow a seller obligated to an exclusive listing agreement to circumvent the broker's commission by entering into an option-to-purchase agreement and allowing exercise of the option only after termination of the listing agreement. This conclusion is in accord with other jurisdictions that have considered this question. *See Century 21 — Clifford Realty v. Gibson*, 152 A.D.2d 446, 447, 549 N.Y.S.2d 232, 233 (1989); *Zinn v. Ex-Cell-O Corp.*, 24 Cal. 2d 290, 296, 149 P.2d 177, 180 (1944).

Fifth, the defendant contends that the court erred in ruling that the plaintiff did not breach his duty of good faith, fair dealing, loyalty and obedience to the defendant by failing to advise OIS that a tenant in the property was three months in arrears on its rent. The trial court correctly found that the plaintiff owed a duty of good faith and fair dealing to the defendant. *See Petition of Contoocook Valley Paper Co.*, 129 N.H. 528, 532, 529 A.2d 1388, 1390 (1987) (broker owes duty of utmost good faith to seller of realty). The trial court also correctly found that the plaintiff did not owe a duty of good faith to the principals of OIS, who claimed that the plaintiff made misrepresentations to them. The plaintiff was not acting as an agent of the purchaser; rather, the plaintiff was acting as an agent of the defendant pursuant to their listing agreement.

The trial court found that the plaintiff did not breach his duty of good faith and fair dealing owed to the defendant by failing to inform OIS of the tenant's rental payment arrearage because the plaintiff testified that he was not aware of the depth of the rental payment problem. Trial courts are given broad discretion in weighing witness testimony at trial. *Parkhurst v. Gibson (Parkhurst)*, 133 N.H. 57, 67, 573 A.2d 454, 460 (1990). We find no error in the court's determination in light of the conflicting testimony at trial as to the plaintiff's knowledge of how many rental payments the tenant had missed. Moreover, the property was ultimately sold to the OIS principals, and the defendant has not shown that he was harmed by the plaintiff's action or inaction. *See Kopka Real Estate*, 119 N.H. at 550, 404 A.2d at 300 (no merit found in complaint that broker failed to inform purchasers of information which sellers desired disclosed be-

cause property was in fact sold to the purchasers who were procured by the broker, and sellers were not harmed).

Finally, the defendant contends that the court erred in ruling that the term "lease," as used in the Agreement, included a lease of less than the entire property. The Agreement does not define the term "lease," and the trial court interpreted the Agreement language to include the lease of any unit of the property. "The interpretation of a contract is a matter of law for this court to decide. . . . We construe the terms of the contract according to the usage of its writers under the circumstances surrounding the formation of the contract." *Appeal of Concerned Corporators of Portsmouth Sav. Bk.*, 129 N.H. 183, 198–99, 525 A.2d 671, 682 (1987). We agree with the trial court's interpretation of the language in the Agreement. In response to OIS's first offer to purchase the property, negotiated by the plaintiff, the defendant proposed the lease of 2800 square feet of the property. The portion of the property ultimately leased to OIS, upon which the commission is now in dispute, was 2800 square feet. The counter offer evidences the fact that the defendant was contemplating the lease of only a portion of the property from the outset of negotiations. Therefore, we find that the term "lease" in the Agreement included the lease of any unit of the property.

*Affirmed.*

All concurred.