COLDWELL BANKER d/b/a MARPLE ASSOCIATES, INC.

v.

JOHN J. AND CATHERINE A. PAUSON

July 14, 1994

*Holland, Donovan, Beckett & Hermans, P.A.*, of Exeter (*William H.M. Beckett* on the brief and orally), for the plaintiff.

*Sanders and McDermott*, of Hampton (*Lawrence M. Edelman* and *Lawrence S. Forsley* on the brief, and *Mr. Forsley* orally), for the defendants.

THAYER, J. The plaintiff, Coldwell Banker d/b/a Marple Associates, Inc. (Marple), appeals from the Superior Court's (*Smukler*, J.) determination that it was not due a real estate brokerage commission from the defendants, John J. and Catherine A. Pauson. We affirm.

On January 2, 1991, Marple and the Pausons entered into an "Exclusive Listing Authorization" for the sale of the Pausons' home located at 845 South Street in Portsmouth. By this agreement, Marple was given the exclusive right to market the Pausons' property until April 1, 1991, "for a price of $425,000.00 or any other price to which [the Pausons] consent." Catherine Pauson signed on her own behalf

and on behalf of her husband for whom she held a power of attorney because he had suffered a stroke. John Pauson was not mentally disabled and was consulted with respect to all negotiations for the sale of the Pauson home.

On January 9, 1991, Pamela Henry and her husband, Ali Kodal, made a written offer to purchase the property for $350,000 subject to various contingencies. This offer expired on January 11, 1991. On January 28, 1991, Catherine Pauson signed the Henry/Kodal offer on behalf of both herself and her husband; Henry and Kodal, however, were no longer willing to purchase the property for that amount. On January 30, 1991, they made a new written offer to purchase the property for $300,000 subject to seller financing of $240,000 at nine percent interest. After consulting with her husband, Catherine Pauson crossed out the $300,000 price and inserted in its place $325,000. Henry and Kodal rejected this counter-offer. After again consulting with her husband, Catherine Pauson informed the Marple broker that she and her husband would accept the sum of $300,000, but that the interest rate for seller financing would have to be ten percent rather than nine percent. Henry and Kodal were unwilling to agree to the increased interest rate. Subsequently, the Marple broker telephoned Catherine Pauson at work to discuss the sale of the Pausons' home. At the conclusion of the conversation, Catherine Pauson told the broker that she would go along with the offer to purchase the house for $300,000 at nine percent interest. Catherine Pauson immediately left work, returned home, and discussed the proposed sale with her husband, who did not favor the acceptance of the Henry/Kodal offer. Catherine Pauson called the Marple broker back to inform her that she and her husband would not accept the Henry/Kodal offer, and that they wished to take the property off the market. Catherine Pauson signed a form to terminate the listing agreement, and the Marple broker made no further effort to market the Pausons' property.

On July 13, 1991, more than five months after the Pausons took their property off the market, Henry wrote to Catherine Pauson expressing her and Kodal's continued interest in purchasing the Pausons' home should the Pausons ever wish to sell it. Catherine Pauson replied in a letter stating that she had no present intention to sell. On December 26, 1991, Catherine Pauson telephoned Henry to inform her that she and her husband were again interested in selling their home. The Pausons' home was appraised at $327,000, and Henry and Kodal purchased it for that price on March 31, 1992.

On March 4, 1992, Marple initiated the instant lawsuit, originally claiming that on January 28, 1991, the Pausons agreed to sell their

home to Henry and Kodal for $350,000. Marple claimed a commission of six percent of that amount, or $21,000, for procuring "a buyer, ready, willing and able to buy the property in accordance with a price and conditions which were acceptable to the seller." After Marple rested its case at trial, the Pausons moved to dismiss on the ground that the evidence clearly showed no agreement in January 1991 between the parties for the sale of the home for $350,000. The trial court denied that motion, ruling that "it can be fairly read as a part of that writ that the commission is based on [the later] sale and . . . I think that the writ is not defective and no amendment is necessary." No further evidence was adduced after this ruling. The court ruled that the Pausons were not obligated to pay Marple a commission because of the listing agreement's ninety-day protection period, which had expired before the Pausons sold the property to Henry and Kodal.

Marple appeals, arguing that the trial court misconstrued the listing agreement. At oral argument Marple made clear that its sole claim is that the March 1992 sale of the Pausons' property to Henry and Kodal for $327,000 gave rise to liability for a commission. Marple contends that the Pausons' temporary acceptance of the $300,000 offer in January 1991 shows that the defendants found this amount to be an acceptable price during the term of the listing agreement. He points out that the $327,000 paid for the property clearly exceeds the $300,000 that the defendants deemed acceptable, and relies on our decision in *Finlay v. Frederick*, 135 N.H. 482, 606 A.2d 1375 (1992), to argue that the defendants must pay Marple a commission because the property was sold to Henry and Kodal on terms equal to or better than those acceptable to the defendants during the term of the listing agreement.

■ "This Court will not disturb the trial court's findings or rulings unless they are not supported by the evidence or are erroneous as a matter of law." *Finlay v. Frederick*, 135 N.H. at 485, 606 A.2d at 1376 (quotation and brackets omitted). A real estate broker's entitlement to a commission is based upon its agency agreement with the seller of the property. *Fischer v. Patterson*, 97 N.H. 318, 320–21, 86 A.2d 851, 852 (1952); *see 93 Clearing House v. Khoury*, 120 N.H. 346, 348, 415 A.2d 671, 673 (1980). Where such an agency agreement exists, "a broker is entitled to a commission under such an agreement if the broker procures a willing and able buyer." *Finlay*, 135 N.H. at 486, 606 A.2d at 1377. It is not disputed that Marple "procured" Henry and Kodal in the sense that Marple "inform[ed the customers] of the property and [led them] to the seller." *93 Clearing House*, 120

N.H. at 349, 415 A.2d at 673–74. What the parties dispute is whether by its terms their particular listing agreement precludes recovery by the broker because the property was sold after the termination of the listing agreement and after the expiration of the ninety-day protection period provided for in the agreement. We hold that it does.

Where a definite time is specified in the listing agreement, the broker is entitled to a commission only if he achieves the result within the time specified. 12 AM. JUR. 2d *Brokers* § 215, at 956 (1964); *see Fischer*, 97 N.H. at 320, 86 A.2d at 852; *cf. Finlay*, 135 N.H. at 488–89, 606 A.2d at 1378–79 (defendant's contention that commission not owed because sale took place beyond protection period failed where option to purchase property was entered into before termination of listing agreement). The listing agreement at issue provides in relevant part:

> "If the property is sold by you, myself or anyone else before the expiration of this agreement, I agree to pay you a fee for professional services of 6%. If a customer is introduced by you or through your efforts in any degree or by a co-broker or his efforts in any degree and a sale or exchange of the property is agreed upon with such customer at whatever price or value, I hereby agree to pay you the above stated professional fee. Such compensation shall be paid if the property is sold, conveyed or otherwise transferred within 90 days after the termination of this authority or any extension thereof to anyone to whom the agent has had negotiations prior to final termination, provided I have received notice in writing, including the names of prospective purchasers, before or upon termination of this agreement or any extension thereof."

Marple argues that the contract sets forth three methods to gain compensation in this paragraph, each spelled out in its own sentence. It argues that the trial court erred in applying the ninety-day time limitation universally to the contract. We find that Marple's reading of the contract is not reasonable. The ninety-day provision falls in a sentence that clearly modifies those which immediately precede it. Both preceding sentences refer to the fee due upon the occurrence of a sale or an agreement to a sale between the seller and a customer introduced by the broker. The sentence in question begins "[s]uch compensation," relating back to the fees spoken of in the preceding sentences.

Our interpretation is bolstered by a later provision in the contract, which reads:

"The Seller agrees . . . [t]o pay the Broker a fee for professional services . . . [i]f . . . [t]he said property, or any part thereof, is sold or exchanged within 3 calendar months after the expiration of this Agreement, or any extensions or renewal hereof, to anyone who is introduced to the said property through the efforts of the Broker or this [*sic*] agents during the original term of [*sic*] any extension thereof."

Read together, these provisions make clear that Marple is to be paid a fee in any case where a sale of the property or an agreement resulting in a sale of the property is achieved before the listing agreement expires, or if a sale of the property is achieved within ninety days (or three months) of the expiration if the sale is to anyone either introduced to the seller or negotiated with by the broker during the term of the agreement. In the instant case, the sale of the property for $327,000, upon which Marple bases its claim, was neither accomplished nor agreed upon until well after the ninety-day protection period had expired. Accordingly, the trial court did not err in denying Marple a commission for this sale.

*Affirmed.*

HORTON, J., with whom BROCK, C.J., joined, dissented; the others concurred.

HORTON, J., dissenting: This case is decided by the trial court, and affirmed in the opinion of the majority, on the basis of the ninety-day protection clause present in both the multiple listing agreement and the Marple agency agreement signed by the parties. The interpretation given to that clause provides an absolute bar to the receipt of a commission for any sale, conveyance, or transfer outside of ninety days from the expiration of the agency. I would interpret the clause differently. The multiple listing agreement provides for the payment of a commission in three circumstances: (1) "[i]f the property is sold by you [the agent], myself [the seller] or anyone else before the expiration of this agreement, I agree to pay you a fee for professional services of 6%"; (2) "[i]f a customer is introduced by you or through your efforts in any degree or by a co-broker or his efforts in any degree and a sale or exchange of the property is agreed upon with such customer at whatever price or value, I hereby agree to pay you the above stated professional fee"; (3) "[s]uch compensation shall be paid if the property is sold, conveyed or otherwise transferred within 90 days after the termination of this authority or any

extension thereof to anyone to whom the agent has had negotiations prior to final termination," provided written notice, including names, has been given and no other agent is involved in the sale. Thus, the multiple listing agreement envisions three situations requiring compensation. The first is where a sale is made in the ordinary course during the term of the listing. The second is where the parties have been brought together by the agent and a sale is subsequently consummated. The third is where the agent, alone, has dealt with the buyer, notified the seller of the contact, and the sale is consummated within ninety days of the end of the listing. The Marple agreement provides for the six percent fee if a ready, willing and able buyer is found on terms and conditions satisfactory to the seller, if sale is through the efforts of anyone, including the seller, *or* when sale is consummated within three months of the end of the listing to a buyer to whom the *property* has been introduced by the agent during the term of the listing. Where the seller and buyer have been brought together by the agent for the purpose of negotiation, the ninety-day limitation should not apply.

The trial court found "[i]n the absence of the protection clause, the exclusive listing authorization is susceptible to a reading that favors the plaintiff's interpretation." Since I would hold that the protection clause is not applicable to this case, and the decision in this case was solely driven by the contrary interpretation of that clause, I would reverse and remand for a new trial.

BROCK, C.J., joins in the dissent.