Hillsborough-southern judicial district
No. 95-061

SAMUEL PROCTOR, JR. & a.

v.

WINSLOW MACDONALD, TRUSTEE OF THE MILFORD ELM
STREET TRUST

March 7, 1997

*Keefe & Keefe, P.A.*, of Wilton (*William Keefe* on the brief and orally), for the plaintiffs.

*Gray, Wendell & Clark P.C.*, of Manchester (*Grenville Clark III* on the brief and orally), for the defendant.

BROCK, C.J. The defendant, Winslow Macdonald, trustee of the Milford Elm Street Trust, appeals from the decision of the Superior Court (*Abramson*, J.) granting the plaintiffs, Samuel Proctor, Jr. and Barry A. Greene d/b/a Proctor & Greene, commissions on certain commercial leases. We affirm.

The trial court found the following facts. The defendant owns commercial and retail rental property in Milford. The plaintiffs are real estate brokers. The plaintiffs and defendant began doing business together during the early 1980s, and entered into an exclusive listing agreement for the property on February 15, 1983. The agreement provided for commissions to be paid the plaintiffs for rentals, renewals, and additional space rentals of the property, based upon the amount of rent charged. The commission schedule was included in the agreement itself, providing for: a commission of decreasing amount per year on five- and three-year leases; a two percent per year commission on renewal leases of existing space; a two percent per year commission on any year above five on a longer term lease; and a two percent per year commission on leases of additional space. The commission schedule also provided for the plaintiffs to be paid a commission if a customer rented space within twelve months after the expiration of the agreement.

By its terms, the agreement expired on September 1, 1983. The parties continued to work together, however. During the six years after the written agreement lapsed, the defendant paid the plaintiffs approximately $46,000 in commissions.

Commissions relating to three tenants are at issue in this case. The first tenant, Cirtronics, leased property in the building in 1985. The defendant paid commissions according to the agreement for the first three years of the lease, and for the two-year renewal lease, signed in 1988. In 1990, Cirtronics renewed its lease for five years, listing the plaintiffs as the broker. Beginning in 1992, Cirtronics has leased additional space in the same building. No commissions have been paid for the 1990 renewal or the additional space leases.

The second tenant involved is Amherst Equipment, Inc. (Amherst). Amherst entered into a three-year lease of property in the building in 1986, for which the plaintiffs received a commission. In 1987, Amherst leased additional space, and in 1989, it renewed its lease for an additional three-year term. The plaintiffs were paid a commission for the additional space lease, and a two percent commission for the 1989 renewal. Soon after the 1989 renewal, Amherst began negotiating with Proctor for the next lease renewal

and an expansion. Later in the negotiations, the defendant requested that Amherst negotiate directly with him. In 1992, Amherst entered a lease for another three-year term, leasing at a reduced rate of rent different space in the building from that originally leased. The plaintiffs have not received commissions on this lease (the Amherst lease).

The third tenant is Royden C. Sanders. Sanders entered a three-year lease in 1984 and a three-year renewal lease in 1987; the plaintiffs received commissions for these two leases. In 1990, Sanders and the defendant agreed to a month-to-month tenancy. The defendant has paid the plaintiffs no commissions on this lease (the Sanders lease) since that time.

The plaintiffs brought the instant action for the unpaid commissions in superior court. The trial court ruled in favor of the plaintiffs, concluding that the conduct of the parties after the expiration of the exclusive listing agreement in 1983 created an agency relationship under which the plaintiffs were entitled to recover the reasonable value of their services, which the trial court found to be equal to what would have been paid under the fee schedule in the original contract. The trial court did not specifically find that the parties continued to operate under the terms of the 1983 agreement after its September 1983 expiration date, although it did find that the agency relationship that existed after the expiration of the agreement incorporated identical terms regarding commissions. *Cf. Bass v. Banga*, 656 F. Supp. 312, 314 (N.D. Ill. 1987) (creation of implied contract where broker procures tenant after brokerage agreement expires), *aff'd*, 857 F.2d 1476 (7th Cir. 1988); 12 AM. JUR. 2D *Brokers* § 219 (1964) (waiver or extension of time limit in brokerage agreements at discretion of principal).

On appeal, the defendant concedes that the record supports the trial court's conclusion that the parties maintained an agency relationship after the expiration of the 1983 agreement. The defendant does not dispute that the fee schedule contained in the 1983 agreement reflected standard commissions for the industry at that time. We will uphold the trial court's findings of fact unless they are unsupported by the evidence; we review the trial court's rulings without deference for errors of law. *Finlay v. Frederick*, 135 N.H. 482, 485, 606 A.2d 1375, 1376 (1992); *see McIntire v. Woodall*, 140 N.H. 228, 230, 666 A.2d 934, 936 (1995). Absent an unambiguous written contract between the parties, the trier of fact must determine the nature, terms, and conditions of the agency agreement. *Goodwin Railroad, Inc. v. State*, 128 N.H. 595, 604, 517 A.2d 823, 829-30 (1986); 12 C.J.S. *Brokers* § 224 (1980).

■   When parties to an agency relationship have not agreed upon the amount of commission, "the agent is entitled to the reasonable worth of his services." *93 Clearing House, Inc. v. Khoury*, 120 N.H. 346, 349, 415 A.2d 671, 674 (1980). We have ruled that the reasonable worth of a broker's services "should be determined in the light of what others were paid at the time and in [the] area for similar services." *Id.* The trial court found as a matter of fact that the fee schedule in the 1983 agreement was customary for the industry during the period of the implied agency between the parties. The defendant does not dispute this, and he willingly paid commissions of such amounts for rentals and renewals after the expiration of the agreement. We conclude that the relationship incorporated the commission schedule contained in the 1983 agreement. *See Eastern Associates, Incorporated v. Sarubin*, 336 A.2d 765, 775-78 (Md. Ct. App. 1975) (incorporating renewal terms in brokerage pursuant to custom and usage).

■   The defendant seeks to sever the renewal and extension clauses from the implied terms, however, on the ground that their enforcement would violate the statute of frauds. *See* RSA 506:2 (1983). We conclude that it would not.

Our statute of frauds provides that "[n]o action shall be brought ... upon any agreement ... that is not to be performed within one year from the time of making it, unless such ... agreement ... is in writing and signed by the party to be charged." *Id.* The implied agency agreement in the instant case, *see 93 Clearing House, Inc.*, 120 N.H. at 349, 415 A.2d at 673, will not run afoul of the statute of frauds if it was possible for performance to be completed within one year of the agreement without breach by either party. *Ives v. Manchester Subaru, Inc.*, 126 N.H. 796, 799, 498 A.2d 297, 300 (1985). We recently clarified our rule on the full performance exception to the statute of frauds in *McIntire v. Woodall*, 140 N.H. 228, 666 A.2d 934. We stated:

> If an agreement can be fully performed by either of the parties within the year, *and it is so performed*, the agreement of the other party is not within the statute, though it may be impossible to perform it within a year. If, however, neither party fully performs *within* the *one-year* period, even though he or she may fully perform at some later time, the contract is within the statute. This rule serves the goals of the statute of frauds, which include promoting certainty and protecting against fraud and perjury, while preventing the harsh and inequitable results that could result from rigid enforcement of the statute.

*Id.* at 231, 666 A.2d at 936-37 (quotation and citations omitted).

When a contract is formed by the conduct of the parties, the question of the date from which the statute of fraud's one-year period is to run arises. We hold that, under the facts of the instant case, a new agreement was reached each time the plaintiffs brought the defendant a tenant who was ready, willing, and able to pay an amount of rent acceptable to the defendant, and the defendant agreed to the relationship. *See 93 Clearing House, Inc.*, 120 N.H. at 349, 415 A.2d at 673.

The defendant does not argue that the renewal clause was not an implied term of the parties' agency relationship after the expiration of the 1983 agreement, nor could he. Under the terms of the 1983 agreement, the plaintiffs fully performed their part of the agreement when they brought the tenants to the defendant. The original agreement plainly contemplated commissions for lease renewals. *See Reynolds v. Tufts*, 179 S.E.2d 652, 653 (Ga. Ct. App. 1970) (broker's entitlement to renewal commissions as compensation for bringing parties together initially). During the course of the implied agency relationship following the expiration of the 1983 agreement, the defendant in fact *paid* some commissions for renewals of leases formed after the expiration of the 1983 agreement. *See Eastern Associates, Incorporated*, 336 A.2d at 775 (broker entitled to renewal commissions as matter of custom if principal can be shown to be on notice of such customary term).

The plaintiffs fully performed their part of the bargain when they procured ready, willing, and able tenants for the defendant's property. *See McIntire*, 140 N.H. at 231, 666 A.2d at 936. The obligation to pay a commission in the event of renewal required no further action on the part of the plaintiffs; all that was required was the event of a renewal. We see no requirement in the agreement that the renewal or lease of additional space arise from additional efforts — specifically directed at renewal — on the part of the plaintiffs. *Compare Eastern Associates, Incorporated*, 336 A.2d at 778 (entitlement to renewal commission without broker participation may be implied upon proof of established custom) *with Seay v. Bennett & Kahnweiler Associates*, 392 N.E.2d 609, 611 (Ill. Ct. App. 1979) (entitlement to renewal commission only if broker can prove written special agreement, negotiation of identical terms as initial lease, or renewal resulted from broker participation). Although the plaintiffs in fact facilitated most of the challenged renewals, for statute of frauds purposes the individual agreements were fully performed upon the procurement of the tenants initially. The agreement to pay commissions for renewals does not violate the statute of frauds.

■ ■   We address the defendant's remaining two arguments together. He argues that the plaintiffs are not entitled to commissions on the leases because they are different from the leases originally negotiated. Specifically, he argues that because the Sanders lease is for a different term and the Amherst lease is for different space, the current leases are not "renewals" within the meaning of the parties' agency agreement.

An agreement to continue a landlord-tenant relationship beyond the original term in a lease need not incorporate terms identical to the original lease in order to be considered a renewal. *See, e.g., Zaniewski v. Mancinone*, 435 A.2d 50, 52 (Conn. Super. Ct. 1981); *Dubinsky Realty, Inc. v. Vactec, Inc.*, 637 S.W.2d 190, 192 (Mo. Ct. App. 1982). Further, "[t]he right to a commission is not affected by the fact that the principal and the customer, after concluding a contract, subsequently enter into an agreement modifying its terms." *Consolidated Realty Co. v. Graves*, 165 S.W.2d 26, 29 (Ky. Ct. App. 1942); *see* 12 C.J.S. *Brokers* § 165.

> The point is that under the agreement [the plaintiffs'] future commissions are earned not because the terms of a later lease match the terms of the original lease, but because [the] plaintiff[s] had produced a tenant having the valuable potential of staying beyond the original term, either as a tenant or as the purchaser of the property.

*Schwartz Co. v. Frassetto Devel.*, 654 A.2d 493, 494 (N.J. Super. Ct. App. Div.), *cert. denied*, 663 A.2d 1359 (N.J. 1995). The subsequent lease must contain substantially similar terms to the original lease in order to constitute a "renewal." *See Westminster Group v. Perimeter 400*, 460 S.E.2d 827, 831 (Ga. Ct. App. 1995), *cert. denied* (Ga. July 13, 1995); BLACK'S LAW DICTIONARY 1296-97 (6th ed. 1990) (defining "renew" and "renewal").

In the Sanders lease, the only significant change in terms has been in the length of obligation. As a month-to-month lessee, Sanders is less valuable to the defendant in terms of certainty of future rental income, but remains a valuable, rent-paying tenant nonetheless. We conclude that the ongoing relationship between Sanders and the defendant constitutes a renewal. *See Westminster Group*, 460 S.E.2d at 831. The trial court was correct in ruling that the plaintiffs still are entitled to the reasonable value of their services, *see 93 Clearing House, Inc.*, 120 N.H. at 349, 415 A.2d at 674, which will be commissions for the period of actual occupancy, *see Emmett S. Hickman Co. v. American Realty Enter., Inc.*, 277 A.2d 688, 690 (Del. Super. Ct. 1971). *See Kallins v. Rex, Incorporated*, 125 N.E.2d 371, 374 (Ohio Ct. App. 1955).

The Amherst lease stands on a slightly different footing. The trial court found that, after paying the plaintiffs commissions for both the original and first renewal leases, the defendant began negotiating directly with Amherst. The trial court found:

> During these negotiations, . . . Proctor showed Amherst Equipment commercial space available in the area that was not owned by the trust. Late in these negotiations, the defendant asked Amherst Equipment to deal directly with it.
>
> Amherst Equipment renewed its lease for another three-year term and took additional space in the building in July of 1992. However, the commercial space leased was not the same space originally leased, and the rent charged was substantially lower.

The trial court further noted that

> David Blackmir, the beneficiary of the trust, testified as the defendant's only witness. He asserted that he and [the defendant] had a business relationship with [the plaintiffs] until 1990 when personal and business reasons dictated a change. In short, Mr. Blackmir ended the relationship when the trust began losing money through reasons unrelated to [the plaintiffs], he found more favorable fee arrangements with other brokers, and he developed a strong personal animosity towards Mr. Proctor.

Amherst eventually leased different space within the building from that originally leased, for lower rent and with limited participation of the plaintiffs. Although some changes may be made to a new lease agreement without preventing it from being considered a renewal, the subsequent agreement must be substantially similar to the original one to be considered a renewal. *See Westminster Group*, 460 S.E.2d at 831. Different time periods, different rental charges or alteration of the space occupied might not, by themselves, make an agreement a *new* one. *See Dubinsky Realty, Inc.*, 637 S.W.2d at 192.

> To hold otherwise would lay open the way for real estate owners to deprive the brokers or agents of their commission by simply entering into a new contract with the buyer or lessee cancelling the contract resulting from the services or efforts of the agent, and entering into a contract of sale or lease for a different price or consideration.

*Consolidated Realty Co.*, 165 S.W.2d at 30; *see Louis Ross Assocs., Inc. v. Interstate Holding Corp.*, 592 A.2d 622, 623 (N.J. Super. Ct. App. Div.), *cert. denied*, 606 A.2d 364 (N.J. 1991); 12 C.J.S. *Brokers* § 156. A lease of a different space, however, raises a more difficult question. *See Strano v. Reisinger Real Estate, Inc.*, 534 So. 2d 1214, 1215 (Fla. Ct. App. 1988), *petition for review dismissed*, 542 So. 2d 1334 (Fla. 1989).

We agree with the trial court. that the continuing relationship between Amherst and the defendant constitutes a renewal of their original relationship, which was created with the benefit of the plaintiffs' services. *See Reynolds*, 179 S.E.2d at 653. As we have stated, in the absence of an unambiguous document describing the relationship of the parties, the determination of the contours of the parties' relationship is for the trier of fact. *See Goodwin Railroad, Inc.*, 128 N.H. at 604, 517 A.2d at 829-30; 12 C.J.S. *Brokers* § 224. This determination is a close one, and we are hesitant to impose a commission requirement for *entirely different space* than that originally leased; however, the space is in the same building for which the plaintiffs previously had been the exclusive leasing brokers, and the plaintiffs in fact commenced the negotiations for renewal. Further, Amherst and the defendant were introduced by the brokers, and awarding a commission based upon the continuation of this fruitful relationship comports with the terms upon which the parties had agreed in the past. We do not hold that a lease with such differing terms will constitute a renewal in every case; we do hold that, under the circumstances of this case, the current lease and the original lease are sufficiently substantially similar to constitute a renewal. *See Zaniewski*, 435 A.2d at 52.

*Affirmed.*

All concurred.